William **WEINBERGER**,
et al., Plaintiffs,

v.

**GREAT NORTHERN NEKOOSA CORP., et al., Defendants.**

**BTZ, INC., Plaintiff,**

v.

**GREAT NORTHERN NEKOOSA CORP., et al., Defendants.**

**Walter RYAN, Plaintiff,**

v.

**GREAT NORTHERN NEKOOSA CORP., et al., Defendants.**

**Civ. Nos. 89–0270–P–C, 89–0273–P–C, and 89–0291–P–C.**

United States District Court,
D. Maine.

July 30, 1992.

David Soley, Bernstein, Shur, Sawyer & Nelson, Portland, Me., Stuart J. Baskin, Sherman & Sterling, New York City, for Georgia Pacific.

Peter Brann, Asst. Atty. Gen., Litigation Div., Augusta, Me., for State of Me.

Stephen Oestreich, Wolf, Popper, Ross, New York City, for Great Northern Nekoosa.

## MEMORANDUM OF DECISION AND ORDER ON PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND COSTS

GENE CARTER, Chief Judge.

This matter is now before the Court on Plaintiffs' Application for Attorneys' Fees and Costs. Counsel for the shareholders of Great Northern Nekoosa, Inc. ("Great Northern"), comprised of sixteen law firms ("Plaintiffs' counsel), seek reimbursement for attorneys' fees and expenses in the total amount of $2,000,000, based on a lodestar of $686,092, a multiplier of 292%, and expenses totalling $48,722.88. This figure of $2,000,000 is based upon a "clear sailing" agreement between Plaintiffs' counsel and Georgia–Pacific Corp. ("Georgia–Pacific"). *See* Plaintiffs' Motion to Dismiss Actions as Moot, Docket No. 33.[1] The First Circuit Court of Appeals remanded this case for a hearing "to set the amount of class counsels' fees and expenses." *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 529 (1st Cir.1991). The Court held the hearing in this matter on May 18 and 19, 1992.[2]

As background history of this case, the First Circuit Court of Appeals' opinion in

---

**1.** The First Circuit Court of Appeals described a clear sailing agreement as "one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling." *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 520 n. 1 (1st Cir.1991).

**2.** Subsequent to the hearing, both Plaintiffs' counsel and Amicus Curiae Maine filed certain motions. Specifically, Plaintiffs' Counsel filed on June 9, 1992, a Motion to Strike "Appendix"

to State of Maine's Principal Brief. *See* Docket Nos. 67–68. Amicus Curiae Maine filed on July 6, 1992, an Objection to Plaintiffs' Counsel's Post–Hearing Affidavits. *See* Docket Nos. 71–72.

The Court hereby *DENIES* Plaintiffs' Counsel's Motion to Strike, and it hereby *DENIES* Amicus Curiae's Objection to Plaintiffs' Counsel's Post–Hearing Affidavits. The Court has reviewed these documents as part of its fact-finding in this case.

*Weinberger* provides a thorough history that the Court need not reiterate here. *Weinberger,* 925 F.2d at 520–22. This Court has also set out the history of the two cases in its several opinions as they developed procedurally. *See Georgia–Pacific Corp. v. Great Northern Nekoosa Corp.,* 731 F.Supp. 38 (D.Me.1990); *Georgia–Pacific Corp. v. Great Northern Nekoosa Corp.,* 728 F.Supp. 807 (D.Me.1990); *Georgia–Pacific Corp. v. Great Northern Nekoosa Corp.,* 727 F.Supp. 31 (D.Me. 1989). Appendix I prepared by the Court shows the parallel procedural development of the cases as reflected by the significant docket entries in each.

## I. DISCUSSION

### A.

The fee petitioner normally "bears the burden of proving entitlement to an attorney fee." 1 M. Derfner & A. Wolf, *Court Awarded Attorneys Fees* ¶ 9.02[4][c], at 9–24.6 (1991). Mooted cases, however, present special problems, "because the elements of proving the catalytic nature of plaintiff's lawsuit—the central question of causation—are in the sole possession of the fee opponent." *Id.* As a result:

> Some courts, recognizing this fact, have required that the defendant prove that the lawsuit was *not* a catalyst for realized changes, or have shifted at least some of the entitlement burden to the fee opponent. Other courts, while they have not specifically stated that they were shifting the burden, have actually done so by inferring causation in the absence of contrary evidence put forth by the defendants.

*Id.,* at 9–24.6–9.24.7 (emphasis in original and footnotes omitted). To determine the appropriate burdens of proof in a case where the litigation has become moot, the Court first must determine the nature of the case. Plaintiffs' counsel argue that this case is a common fund or common benefit, as opposed to a statutory fee-shifting, case. *See* Plaintiffs' Post Hearing Memorandum in Support of Application for Attorneys' Fees and Reimbursement of Expenses ("Plaintiffs' Post Hearing Memorandum") at 14; Plaintiffs' Post–Hearing Reply Memorandum in Support of Application for Attorneys' Fees and Reimbursement of Expenses ("Plaintiffs' Post–Hearing Reply Memorandum") at 9.[3] While acknowledging that this case is not a statutory fee-shifting case, the First Circuit Court of Appeals repeatedly noted that this case is *not* a common fund case. *See Weinberger,* 925 F.2d at 520, 522, 523, 524, 526 n. 10.[4] The cases upon which Plaintiffs'

---

**3.** In such cases, where the plaintiff's suit has been rendered moot by subsequent action of the defendant, the plaintiff has the initial burden of "establish[ing] [that] a variety of 'benefits' flow[ed] from his law suit ..." *Barton v. Drummond Co.,* 636 F.2d 978, 983 (5th Cir. 1981). *See also O'Neill v. Church's Fried Chicken, Inc.,* 910 F.2d 263, 265 (5th Cir.1990) ("Texas law allows shareholders who pursue a successful derivative suit to recover their attorneys' fees from the corporation if they show that they have conferred a substantial benefit to the corporation through their efforts.") (footnote omitted); *Shields v. Murphy,* 116 F.R.D. 600, 603 (D.N.J.1987) ("Plaintiff has the burden to prove that ... a substantial benefit was conferred on the corporation.").

Once the plaintiff has met this threshold burden, "the burden properly shifts to defendants to establish the absence of a causal connection in order to defeat a claim for legal fees." *Koppel v. Wien,* 743 F.2d 129, 135 (2d Cir.1984). *See also Barton,* 636 F.2d at 985; *Joy Manufacturing Corp. v. Pullman–Peabody Co.,* 729 F.Supp. 449, 460 (W.D.Pa.1989); *Shields,* 116

F.R.D. at 603; *Allied Artists Pictures Corp. v. Baron,* 413 A.2d 876, 879 (Del.1980); *McDonnell Douglas Corp. v. Palley,* 310 A.2d 635 (Del.1973).

**4.** Although the Court used the term "common fund" throughout its opinion, it noted the following:

> We use the term "common fund" somewhat loosely throughout this opinion, referring not only to the classic case where a recovery is effected on behalf of the class and thereafter distributed among the members, but also to the case where the class action produces not a common fund but a common benefit, say, in a tender offer, an increased price per share (which enriches the class even though the emolument is not paid into a central kitty but goes directly to the shareholders). In such "common benefit" cases, courts have held that class counsel's reasonable fees may be charged to the beneficiaries despite the absence of a common fund.

*Weinberger,* 925 F.2d at 522 n. 6 (citations omitted). The Court construes this explanation to mean that when the First Circuit Court of Ap-

counsel rely to support a presumption of causation in this litigation are common benefit cases,[5] and, hence, in light of the *Weinberger* opinion, they are distinguishable from the instant case. Therefore, the Court finds unpersuasive Plaintiffs' counsel's reliance upon such cases to establish a presumption of causation.[6] The Court rejects such a presumption in this fee litigation.

Instead, given the mandate of the First Circuit Court of Appeals for an evidentiary hearing to determine what, if any, attorneys' fees should be awarded in this case, the Court concludes that Plaintiffs' counsel, as the moving party, have the burden of proof in this case. It is the Plaintiffs' counsel who must demonstrate that their alleged contributions to this case were a *substantial* or *material* factor in the outcome of the tender offer litigation and its resulting benefits to the Great Northern shareholders.

Plaintiffs' counsel have identified several allegedly significant contributions that they made during the litigation. First, during the hearing, Stephen Oestreich, lead counsel, testified that Plaintiffs' counsel were a factor in Great Northern's decision to auction the company. *See* Hearing Record ("H.R.") at 80, 95. He emphasized the importance of the affidavit of Bernard Nussbaum, Great Northern's counsel, in this regard. *See id.* at 80–81; Plaintiff's Exhibit 2. Mr. Nussbaum, however, did not state that such actions were a *substan-*

---

peals finds that this is not a common fund case, it is also concluding that it is not a common benefit case.

The common fund exception to the American rule "allows the apportionment of the plaintiff's attorney fees among those persons who have benefited from the plaintiff's litigation to create, preserve, protect, or otherwise affect a fund. As these beneficiaries may not be under the jurisdiction of the court, the court charges the fees against the fund, over which it has control." 1 M. Derfner & A. Wolf, *supra,* ¶ 2.0, at 2–1.

The common (or substantial benefit) exception to the American rule "compensates a plaintiff who has conferred a *non-pecuniary* benefit upon persons usually not parties to the litigation. As there is no fund under the court's jurisdiction, the plaintiff's attorney fees are assessed against the defendant." *Id.,* ¶ 3.0, at 3–1 (emphasis added).

The First Circuit Court of Appeals rightfully distinguished this case from the aforementioned common fund or common benefit cases because it does not fit within the parameters of either type of case.

**5.** *See supra* note 3. *See also* Hearing Record ("H.R.") at 10–15.

**6.** These common benefit cases relied upon by Plaintiffs' counsel involved defendants who were contesting the award of attorneys' fees and who were "thus unlikely to admit that the plaintiff's lawsuit caused it to take the actions it took." *Amicus Curiae Maine's Memorandum Concerning Plaintiffs' Counsel's Renewed Application for Attorneys' Fees and Expenses* ("Amicus Curiae Memorandum") at 24. Moreover, the defendants in those cases were in the best position to rebut the presumption that the plaintiffs' lawsuits caused such actions. In this fee litigation, no defendant now exists to rebut this presumption of causation.

*First, Great Northern, whose actions were allegedly caused by Plaintiffs' lawsuits, had no obligation to pay Plaintiffs' counsel any fees; hence, it had no reason to contest any fee award. See id.* Second, Plaintiffs agreed to dismiss their suits as moot, "contingent upon payment of attorneys' fees and expenses." *Weinberger,* 925 F.2d at 521. As a result, Plaintiffs' counsel entered into a "clear sailing agreement" on February 23, 1990, with Georgia–Pacific, which does not contest the fee award (up to a ceiling of $2,000,000). *See* Plaintiffs' Motion to Dismiss Actions as Moot, Docket No. 33. Finally, contrary to Plaintiffs' counsel's assertion, *see* Plaintiffs' Post Hearing Memorandum at 14 n. 8, it is not practical to presuppose that Amicus Curiae Maine, as a friend of the Court, is in any practical position to assume effectively any burden regarding causation in this litigation. Such a burden is appropriate for the party who has the ability and knowledge to rebut the presumption; that is, the defendant who made the decision that led to the mooting of the litigation. *See, e.g., Allied Artists Pictures Corp.,* 413 A.2d at 880 ("It is the defendant ... who is in a position to know the reasons, events and decisions leading up to the defendant's action.)" Clearly, Amicus Curiae Maine does not have that ability or knowledge to rebut the presumption simply because it is not Great Northern. As the First Circuit Court of Appeals noted in *Weinberger:* "The absence of adversariness makes heightened judicial oversight of this type of agreement highly desirable." 925 F.2d at 525. Thus, because Great Northern was not a party in the evidentiary hearing regarding attorneys' fees, no party would be present in this fee litigation to rebut a presumption of causation if

*tial* or *material* factor.[7] His affidavit is definitively understated in asserting the significance of the role of the action of Plaintiffs' counsel. With respect to Mr. Oestreich's request for the affidavit, the Court does not find credible his testimony that he sought to establish that Plaintiffs' counsel's actions were merely a factor, as opposed to a significant, material, or substantial factor, in Great Northern's decision to auction the company. *See id.* at 80–81. As the Court sees it, the tenor of the affidavit is intended by Nussbaum to indicate that Plaintiffs' counsel's actions were a factor of minimal weight in Great Northern's decision-making process.

Georgia–Pacific's counsel, Stuart Baskin, whose testimony the Court found highly credible, testified that he thought Plaintiffs' counsel "were trying to be helpful and trying to assist." *Id.* at 164. He added that "I don't think the legal arguments [of Georgia–Pacific and Plaintiffs] were a whole lot different." *Id.* No indication exists in his testimony that he found Plaintiffs' counsel's efforts to be a substantial or material factor in Georgia–Pacific's decision to increase its bid or in Great Northern's decision to auction itself. Rather, Mr. Baskin emphasized what he believed to be the two most important issues in the takeover (in neither of which Plaintiffs' counsel played any role); namely, the Connecticut antitrust litigation and the supermajority motion. *See id.* at 176–80.[8] In this respect, the Court's view at the time of the underlying action and, in retrospect in acting on this motion, coincide with Mr. Baskin's assessment.

Aside from the testimony and/or affidavits of both Great Northern's and Georgia–Pacific's counsel, the Court's independent evaluation of what Plaintiffs' counsel identify as their major contributions in this

litigation further reveals the absence of "significant factors" in Plaintiffs' counsel's actions in this litigation. *Cf. Joy Manufacturing Corp.*, 729 F.Supp. at 457 ("[W]e find that the Berger intervention was a *material factor* in producing a benefit to Joy and its shareholders.... The relevant sequence of events in this case reveals a change of Joy's position in favor of a public auction after the appearance and participation of plaintiff intervenor, and, we believe, as a consequence thereof.") (emphasis added).

First, with respect to Plaintiffs' counsel's deposition of Great Northern's investment banker, Edward Mule of Goldman Sachs, the Court agrees with witnesses' testimony that such deposition was handled well. *See* H.R. at 38, 160–61. At the same time, however, it was primarily utilized in Plaintiffs' motion for a preliminary injunction filed on January 17, 1990, which was never decided by the Court.

Second, with respect to the deposition of William Laidig, Plaintiffs' counsel assert that this examination was "very very instrumental in giving us a basis for being successful in the ultimate, if the case ever went before the Court ultimately to have the pill redeemed." *Id.* at 38. In fact, however, any benefit derived from this deposition again is superfluous to the final result because Plaintiffs' motion for a preliminary injunction was never acted upon by the Court. Moreover, other than the Goldman Sachs deposition, Georgia–Pacific's counsel did not recall any significant role played by any other deposition in which Plaintiffs' counsel were involved. *See id.* at 182–83.

Third, Mr. Oestreich testified that he sent to Mr. Baskin the briefs that were filed in the Bank of New York/Irving Bank

the Court had concluded that such a presumption operated here.

7. *See also Joy Manufacturing Corp.*, 729 F.Supp. at 453 ("Where there is more than one cause, the plaintiff is a prevailing party if the action was a *material* factor in bringing about the defendant's action.") (emphasis added).

8. In a letter dated March 28, 1991, to the Court, Stuart Baskin stated:

[T]o the extent that the shareholder plaintiffs characterize Georgia–Pacific's position as having "recogni[zed] ... the substantial benefit which plaintiffs conferred in consummating the transaction, we must respectfully take exception. The determinations of plaintiffs' contribution, and how it translates into a fair and appropriate fee, are, in our view, decisions solely for this Court.
Docket No. 60 (citation omitted).

litigation to assist in defeating a defense tactic employed by the Wachtell Lipton firm of establishing two sets of directors. *See id.* at 40–41. He asserted that this action was "instrumental in defeating the defenses put up by Great Northern Nekoosa." *Id.* at 41. Georgia–Pacific's counsel, rather than Plaintiffs' counsel, however, actually prepared the briefs on the motion in question, which was never decided by the Court. Plaintiffs' counsel never filed a brief on that issue. *See id.* at 86. Plaintiffs' counsel's assistance was limited merely to providing copies of briefs filed in the previous case. The Court is unpersuaded by Mr. Oestreich's testimony regarding the "significance" of this contribution.

Fourth, Mr. Oestreich testified that the motion for a preliminary injunction filed on January 17, 1990, "was very instrumental in convincing [Great Northern] to drop the pill." *Id.* at 41. He added that the (unfiled) reply brief for that motion was "virtually completed" when it became moot. *Id.* No oral argument was held on this motion and, in fact, the Court never ruled on it. *See id.* at 240–41; Appendix 1. Plaintiffs' counsel, however, assert that the mere filing of this motion was a significant factor in Great Northern's decision to auction the company a month later. The Court concludes that Plaintiffs' counsel have failed to meet their burden in demonstrating that the filing of this motion was a significant factor in Great Northern's actions.

Finally, Mr. Oestreich testified that Plaintiffs' counsel's efforts in opposing Great Northern's motion for a preliminary injunction, specifically, their Memorandum of Shareholder Plaintiffs in Opposition to Great Northern's Motion for Preliminary Injunction filed on January 19, 1990, represented a significant contribution. *See id.* at 39. For example, they assert that the affidavit of Bear Stearns, a representative of a major Great Northern stockholder, along with Plaintiffs' counsel's papers, "was *one of the most important factors*

as to why the Court denied Nekoosa's motion to enjoin the tender offer." *Id.* (emphasis added). The Court, knowing well its own reasoning process, assigns several objectively verifiable reasons why this conclusion is wrong.

First, the Court denied Great Northern's motion on February 15, 1991, two days *after* Great Northern announced, on February 13, 1991, that it was auctioning the company to the highest bidder. *See Georgia–Pacific Corp. v. Great Northern Nekoosa Corp.*, 795 F.Supp. 484 (D.Me.1990). Given this timing, even Mr. Oestreich concedes that the Court's denial of this motion could not be a significant turning point in Great Northern's decision to auction the company. *See* H.R. at 107. In this light, the Court cannot accept Mr. Oestreich's representation that Plaintiffs' counsel's efforts were significant when the Court had not even acted on the motion until *after* Great Northern's decision to auction the company.

Second, the Court denied Great Northern's motion primarily on the grounds that Great Northern "ha[d] failed to meet its burden of showing that [Georgia–Pacific's 14D filings and its public statements] do not fairly and truthfully reflect what Georgia–Pacific's plans are with respect to Great Northern's assets." *Georgia–Pacific*, 795 F.Supp. at 492. Third, the Court finds persuasive Mr. Baskin's testimony that Great Northern's motion was not a "showstopper." *See* H.R. at 177–78. Finally, with respect to the Bear Stearns' affidavit, the Court disagrees with Plaintiffs' counsel's unfounded assertion that this affidavit was "one of the most important factors" as to why the Court denied Great Northern's preliminary injunction. The Court in *dicta* made one reference in a footnote to the affidavit that clearly showed that any information contained in such affidavit was not an "important factor" in the Court's decision to deny injunctive relief to Great Northern. *See Georgia–Pacific*, 795 F. Supp. at 492 n. 6.[9]

9. The Court stated in pertinent part:

Without deciding the issue, the Court notes that it also harbors some doubts about the

materiality of information concerning postmerger divestiture of assets of the target corporation to shareholders of that corporation

In sum, at the time of the critical event in this case—Great Northern's announcement on February 13, 1990, that it was auctioning the company—Plaintiffs' counsel's motions in this litigation had neither been acted upon by the Court nor resolved to Plaintiffs' benefit. *See* H.R. at 87–89; Appendix 1. In contrast, other factors not involving Plaintiffs' counsel seemed particularly significant. Specifically, Georgia–Pacific's supermajority motion had prevailed, *see Georgia–Pacific Corp. v. Great Northern Nekoosa Corp.*, 731 F.Supp. 38 (D.Me.1990),[10] and Georgia–Pacific was experiencing anticipated success in its Connecticut antitrust litigation. *See* H.R. at 175–76, 239–40.[11]

The Court concludes that Plaintiffs' counsel have failed to meet their burden in demonstrating that their aforementioned "contributions," either singularly or collectively, were substantial or material factors in terms of the outcome of the tender offer litigation and its resulting benefits to Great Northern shareholders.[12] The Court, therefore, concludes that Plaintiffs' counsel are not entitled to receive any attorneys' fees and expenses. Accordingly, their request for attorneys' fees and expenses is hereby DENIED.

In the interest of providing a complete decisional record for dispositive appellate review of all issues now generated, however, the Court will determine the appropriate award of attorneys' fees and expenses to Plaintiffs' counsel as it would if persuaded that said counsel had met their burden in this case.

in an all cash tender offer such as that proposed here.... The Court has received an affidavit from a representative of a major shareholder affirming that divestiture of Great Northern's assets post-merger is of little importance to him in deciding whether to tender. If the Court were to decide that the issue of asset divestiture is not material to the shareholders in this situation, of course, no Williams Act violation could be made out and there would be a further ground for denying the injunctive relief sought by Great Northern.

*Id.* (citation omitted).

**B.**

As the Court recently noted, "[a]ttorneys' fees must be *reasonable*. This Court's role 'as the guarantor of fairness obligates it not to accept uncritically what lawyers self-servingly suggest is reasonable compensation for their services.'" *Fleet Bank of Maine v. Steeves*, 793 F.Supp. 18, 20 (D.Me.1992) (quoting *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir.1991)). *See also* 2 M. Derfner & A. Wolf, *supra*, ¶ 16.02[1], at 16–9 n. 2 ("Under the equitable exceptions to the American rule, the courts have also stressed that fees must be reasonable, and they have meticulously segregated 'hard' and 'soft' hours, and denied compensation for the latter."). Similarly, as the Supreme Court noted in the context of 42 U.S.C. section 1988: "Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, *just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.*" *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983) (emphasis added).

The First Circuit Court of Appeals has instructed this Court to employ the lodestar method for fee determination:

If an alternative method is not expressly dictated by applicable law, we have customarily found it best to calculate fees by means of the time-and-rate method known as the lodestar. In this instance, the district court indicated its clear preference for this approach. Given the lodestar method's proven usefulness as an

**10.** The Court finds credible the testimony of Stuart Baskin, legal counsel for Georgia–Pacific Corp., regarding the importance of this decision to the tender offer litigation. *See* H.R. at 176–77. *Cf.* H.R. at 111–13.

**11.** See also H.R. at 89–94, 172–76 for a discussion of the significance of the antitrust litigation in Great Northern's decision to auction the company.

**12.** Mr. Oestreich admitted that the shareholder plaintiffs did not do anything to cause Georgia–Pacific to increase its bid to Great Northern from $58 to $63 per share. *See* H.R. at 77.

understandable and manageable way of determining reasonable attorneys' fees in statutory cases, we find no reason why district courts should be divested of authority to employ it in analyzing fee applications submitted for approval in connection with class action settlements under Rule 23(e).

*Weinberger*, 925 F.2d at 526 (citation omitted). With respect to the lodestar method, the fee applicant has the burden in terms of the number of hours to be included in the lodestar, the hourly rates to be applied, and the propriety of multipliers. *See Weinberger*, 925 F.2d at 527 n. 11 ("In applying for judicial approval of a fee award, it is the plaintiffs' burden to furnish the evidence required, not the court's burden to seek it out."). *See also Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 952 (1st Cir.1984); *Inmates of the Maine State Prison v. Zitnay*, 590 F.Supp. 979, 984 (E.D.Me.1984).

The Court must "undertake an independent review of the time records to determine 'the reasonableness of the hours spent and the hourly rate sought.'" *Weinberger*, 925 F.2d at 529 (quoting *In re Spillane*, 884 F.2d 642, 647 (1st Cir. 1989)).[13] In undertaking this review, this Court has painstakingly acted upon the First Circuit Court of Appeals' mandate that "the court should scrutinize fee applications carefully." *Id.* at 525.[14]

### i. Hourly Rates

■ A threshold question for the Court in determining the lodestar is the appropriate hourly rate for Plaintiffs' nonlocal counsel. The general rule is as follows:

> All federal courts seem to agree that the proper rate to apply to the work of out-of-town counsel is that of the forum community, rather than that which the attorney charges in the community in which she practices.

2 M. Derfner & A. Wolf, *supra*, ¶ 16.03[8], at 16–99.

An exception to this rule arises where the litigation requires expertise that attorneys within the forum community do not possess. *See id.; Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir.1983). Plaintiffs' counsel assert that the use of the prevailing rate in their own community "is especially appropriate in this litigation because the bulk of the work, including virtually all the discovery, actually occurred in New York City." Plaintiffs' Post Hearing Memorandum at 18–19.

Amicus Curiae Maine argues that Plaintiffs' counsel should be limited to local

---

**13.** Based on its independent review, the Court finds pertinent the conclusion of another court regarding the matter of attorneys' fees:

> Here, this Court was required to sift through literally hundreds of pages of the Defendants' claimed fees and expenses, line by line, just to arrive at the 61–page appendix of allowed fees and costs. Needless to say, this project kept the Court occupied for dozens of hours—hours that clearly would have been better spent on more deserving causes than mopping up after frivolous ones.

*Henry v. Farmer City State Bank*, 127 F.R.D. 154, 159 (C.D.Ill.1989).

**14.** Plaintiffs' counsel argues that the First Circuit Court of Appeals made an erroneous factual conclusion in finding that "plaintiffs were in a position to coerce a fee agreement in the amount of $2 million by threatening to delay consummation of a multi-billion dollar tender offer." Plaintiffs' Post–Hearing Reply Memorandum at 5. They assert that "[t]he record of the Hearing held before this Court conclusively demonstrates that the First Circuit was in error—*i.e.*, no threat existed (or even could have existed) to the consummation of the tender of-

fer at the time the agreement on fees was being negotiated." *Id.* Based on this assertion, they conclude that the Court should *not* follow *Weinberger* on remand, but rather that the Court should follow Supreme Court cases that encourage the settlement, not litigation, of attorneys' fees. *Id.* at 5 & n. 6, 6.

The Court agrees that the clear sailing agreement was negotiated and consummated after the tender offer had been accepted by Great Northern on February 20, 1990. *See* H.R. at 47–49; 183–84. At the same time, Mr. Oestreich testified that Plaintiffs' counsel had begun negotiating with Georgia–Pacific through Mr. Baskin before the tender offer deal was closed. *See id.* at 45–47. Furthermore, Mr. Baskin's testimony reveals that the incentive for entering into the clear sailing agreement was to avoid delay in distributing the tender. *See id.* at 183–84. In light of both Mr. Oestreich's and Mr. Baskin's testimony, the Court is unpersuaded by Plaintiffs' counsel's conclusion that the First Circuit Court of Appeals made an "erroneous factual conclusion." Therefore, it rejects their suggestion that this Court not follow *Weinberger* on remand.

hourly rates. They assert that "[t]he need for specialized counsel is belied by the fact that the plaintiffs' counsel's greatest success in this litigation—this court's footnote citation of their efforts in connection with Great Northern's motion for a preliminary injunction—was argued by the plaintiffs' *local* counsel." Amicus Curiae Memorandum at 31 (emphasis in original). They also argue that the amount of hours expended by Plaintiffs' counsel belies their expertise. "[G]iven the ... nearly 900 hours in connection with the plaintiffs' motion for a preliminary injunction on the poison pill—it is difficult to believe that the plaintiffs' counsel had any familiarity with the relevant law in this matter." *Id.*

In examining the case law in this area, the Court is persuaded that Plaintiffs' counsel are entitled to compensation at their billed rates in this litigation.[15] The First Circuit Court of Appeals noted:

> The reasonable hourly rate is usually stated to be "that prevailing in the community for similar work." However, an out-of-town specialist may be able to command a somewhat higher price for his talents, both because of his specialty and because he is likely to be from a larger city, where rates are higher. If a local attorney could perform the service, a well-informed private client, paying his own fees, would probably hire local counsel at the local, average rate. If the client hires a local specialist, he will ordinarily pay a premium rate. Where it is unreasonable to select a higher priced outside attorney—as, for example, in an ordinary case requiring no specialized abilities not amply reflected among local lawyers—the local rate is the appropriate yardstick. But, if the client needs to go to a different city to find that specialist, he will expect to pay the rate prevailing in that city. In such a case, there is no basis for concluding that the specialist's ordinary rate is unreasonably high. If one wishes to be literal, the "prevailing" rate "in the community" for work performed by an outside specialist where that outside specialist is reasonable is most likely to be that outside specialist's ordinary rate. If the courts (without cause) award fees at less than that rate, they will tend to prevent those in smaller communities from obtaining the experienced legal counsel they may need, contrary to the policy behind awards of attorneys' fees to prevailing parties.

*Maceira,* 698 F.2d at 40 (citations omitted).[16] The Court finds that the aforementioned conclusion of the First Circuit Court of Appeals has bearing on the instant case. The Court recognizes that Plaintiffs' counsel purport to have specialized expertise in takeover litigation that local counsel may lack.[17] Although local counsel were active-

**15.** As the Court discusses later, however, it has made downward adjustments in hourly rates for travel time.

**16.** The Seventh Circuit Court of Appeals similarly noted:

> If a high priced, out of town attorney renders services which local attorneys could do as well, and there is no other reason to have them performed by the former, then the judge, in his discretion, might allow only an hourly rate which local attorneys would have charged for the same service. On the other hand, there are undoubtedly services which a local attorney may not be willing or able to perform. The complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally. *Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760, 768 (7th Cir.1982), *cert. denied,* 461 U.S. 956, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983).

**17.** This conclusion is heavily influenced by a generous exercise of the Court's discretion in the direction of giving Plaintiffs' counsel the benefit of the doubt on the point. The doubt arises from the Court's inability to find any objectively displayed instance of the deployment in action or thought by Plaintiffs' counsel of any highly specialized legal proficiency or knowledge that made significant beneficial contribution to the resolution of the tender offer case in a way that was favorable to the plaintiff shareholders. Despite Mr. Oestreich's fulsome testimony in praise of the highly refined legal acumen of himself and his confreres, and his condescending assessment of the ability of the local bar of this Court, there is no showing in the record of either of these cases of the actual implementation of such luminous skills, if possessed, in pursuit of the shareholders' interest. The performance of Mr. Newman, of the local bar, casts grave doubt, in the Court's view, on the proposition that Mr. Oestreich and company from outside the district are, in fact, the superior lions of specialized art and proficiency that he has proclaimed them to be.

ly involved in the litigation, they were subject to the supervision and coordination of Plaintiffs' out-of-town counsel who had more extensive experience in takeover litigation. Therefore, the Court concludes that Plaintiffs' counsel are entitled to be reimbursed at the nonlocal rates that they have billed in this case.[18]

The Court, however, agrees with Amicus Curiae Maine's alternative argument that, even if Plaintiffs' counsel's hourly rates are not reduced to conform to those of the forum community, such rates should be reduced where appropriate, based upon the nature of the tasks that Plaintiffs' counsel performed. As Amicus Curiae Maine notes: "[P]laintiffs' counsel routinely seek compensation at senior partner rates for such tasks as reading the Wall Street Journal and digesting depositions." *Amicus Curiae Memorandum* at 32–33. *See also* H.R. at 133–34; *Manville Sales Corp. v. Paramount Systems, Inc.*, 124 F.R.D. 595, 601 (E.D.Pa.1989) ("The type of work performed by these patent attorneys in connection with this aspect of the litigation could have been performed by a more junior associate in the firm at a much lower rate, and therefore, any other rate of compensation would be excessive."). Similarly, as the Third Circuit Court of Appeals noted:

> Nor do we approve the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates. Routine tasks, if performed by senior partners in large firms, should not be billed at their usual rates. A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn.

*Ursic*, 719 F.2d at 677. *See also In Re Fine Paper Antitrust Litigation*, 98 F.R.D. 48, 83 (E.D.Pa.1983) ("In this litigation, it was not unusual for senior partners to devote a great deal of time to clerical,

administrative and investigative tasks such as document review. Partners will not be compensated at partner-level rates for tasks which are customarily performed by junior associates or paralegals.").

Although the Court agrees with Amicus Curiae Maine's argument that partners should not seek compensation at their usual billing rates for associate-level tasks, the Court finds it unnecessary to make any adjustments in the hourly rates on this basis. As the subsequent sections will indicate, the Court has either disallowed or reduced hours related to activity for which such adjustments would be otherwise appropriate, such as reading the *Wall Street Journal*, digesting depositions, or reviewing documents. Thus, although the Court is not directly adjusting the hourly rates of Plaintiffs' counsel, except those rates related to travel, the Court's disallowance or reduction of billings of certain activities will yield the same rehabilitative effect.

#### ii. Compensable Hours

Once the Court has established a reasonable hourly rate, it must then determine the hours reasonably expended in advancing the client's interest. *See Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. In determining the reasonableness of such hours, the Court will consider numerous factors:

> Because a court awarded attorney fee must be "reasonable," the courts base an award not necessarily on the number of hours actually expended by petitioner's counsel, but on the number of hours *reasonably* expended by petitioner's counsel, and these two numbers are only sometimes the same. The court may exclude large numbers of hours altogether, as having been spent on uncompensable activities, or as being inadequately documented, as having been nonproductive, duplicative, unnecessary, or simply ex-

---

18. At the same time, the Court recognizes that: A fee applicant cannot demand a high hourly rate—which is based on his or her experience, reputation, and a presumed familiarity with the applicable law—and then run up an inordinate amount of time researching that same law. Double dipping, in any form, cannot be

condoned. Our cases supply no authority for rewarding non-stop meter running in law offices.
*Ursic*, 719 F.2d at 677.
The Court will address the number of hours billed by Plaintiffs' counsel in the next section.

cessive, or as having been spent on unsuccessful claims.

2 M. Derfner & A. Wolf, *supra,* ¶ 16.02[1], at 16–9 (emphasis in original and footnotes omitted).[19]

 In this regard, the Court must determine whether Plaintiffs' counsel "exercised 'billing judgment' in submitting the fee application." *Inmates of Maine State Prison v. Zitnay,* 590 F.Supp. 979, 985 (D.Me.1984). The Court finds that Plaintiffs' counsel have failed to exercise the requisite "billing judgment" in the submission of their time records.[20] Based on the hearing in this matter, as well as the exhibits, the Court concludes that no one exercised "billing judgment" in reviewing the time records, *see* H.R. at 36–37, and in deducting any time as excessive, redundant, or unnecessary. *See id.* at 36–37; 120–21; 124–34; 150–51. In examining each firm's time records provided in the exhibits, the Court finds that most records contain obvious examples of duplication or excess. Exaggeration, rather than restraint, has been the watchword of Plaintiffs' counsel's entire exercise. Based on its review of these records, the Court concludes that Plaintiffs' counsel have made no attempt to separate the "hard" hours from the "soft" in their fee application and that, therefore, the billed time is unduly excessive. As one court noted (in the context of 42 U.S.C. section 1988):

> This Court simply does not believe this case warranted the excessive amount of time charged by the Plaintiffs' attorneys. It appears they were shooting mice with a cannon.

*Whitcher v. Matthews,* 136 F.R.D. 582, 587 (W.D.N.C.1991).

Here, the Court will exercise the requisite billing judgment and deduct or reduce all hours contained in the time records of each firm that it finds to be "excessive, duplicative, or otherwise redundant." Specifically, the Court will disallow or reduce hours and/or hourly billing rates in several areas as follows: time billed for initial preparation of the case, including preparation of complaints and other initial matters; Plaintiffs' motions, including their motions for a preliminary injunction and for partial summary judgment; telephone conferences; co-counsel conferences; review of documents, pleadings, and newspapers; depositions (preparation, attendance, and digests); preparation of fee applications; nonfees' work performed after February

---

**19.** Plaintiffs' counsel argues that the Court should not rely upon any statutory fee-shifting cases in its determination of the lodestar. *See* Plaintiffs' Post Hearing Memorandum at 8–13. The Court disagrees. Such cases are appropriate in evaluating the appropriate lodestar insofar as they also employed the lodestar method for fee determination. Courts' use of the lodestar *is* the proper guideline for determining which cases are relevant in guiding the Court's lodestar analysis here. Whether cases are statutory fee-shifting or fee-sharing cases is not a proper litmus test in this regard. Significantly, the First Circuit Court of Appeals in *Weinberger* cited to numerous statutory fee-shifting cases in its discussion of the lodestar. *See Weinberger,* 925 F.2d at 527 (citing *Furtado v. Bishop,* 635 F.2d 915, 919–20 (1st Cir.1980); *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 952 (1st Cir.1984); *King v. Greenblatt,* 560 F.2d 1024, 1027 (1st Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978); *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941)). *See also* Amicus Curiae Memorandum at 40 n. 33 ("We need look no further than the prior appeal in this case where the court of appeals relied interchangeably on fee shifting and common fund or common benefit cases."). Indeed, despite Plaintiffs'

counsel's protestations, they also cite such cases, apparently when it is convenient to do so. *See, e.g.,* Plaintiffs' Post Hearing Memorandum at 18 (quoting *Maceira v. Pagan,* 698 F.2d 38, 40–41 (1st Cir.1983) (Landrum–Griffin Act)); Plaintiffs' Post–Hearing Reply Memorandum at 6 (citing *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941) (section 1988)), at 17 (citing *Missouri v. Jenkins,* 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) (section 1988)). The Court will cite appropriate cases, be they fee-shifting or fee-sharing, in its determination of the proper lodestar.

**20.** "Billing judgment" has been described as follows:

> This concept may be most clearly understood by viewing fee computation as a process similar to preparing a bill for a client. It is sometimes true that not all time which an attorney or a firm has spent on a given suit is charged to the client, whether because the firm itself views the total fee as excessive for the results produced, or the firm views certain of its time as having been nonproductive or duplicative.

2 M. Derfner & A. Wolf, *supra,* ¶ 16.02[5], at 16–46 n. 111.

20, 1990; paralegal time; and travel time.[21] First, however, it will disallow all hours that are inadequately documented.

### a. Inadequate Documentation

The Court must determine if the record is "detailed enough to enable the Court to determine if plaintiffs' attorney is claiming compensation for hours that are redundant, excessive, or otherwise unnecessary ..." Zitnay, 590 F.Supp. at 985. The First Circuit Court of Appeals has "painstakingly delineated the specific documentary preconditions to fee awards, requiring litigants to submit a 'full and specific accounting' of the tasks performed, the dates of performance, and the number of hours spent on each task." Weinberger, 925 F.2d at 527. In this regard, Plaintiffs' counsel must provide "a full and specific accounting for their time; bills which simply list a certain number of hours and lack such important specifics as dates and the nature of work performed during the hour or hours in question should be refused." King v. Greenblatt, 560 F.2d 1024, 1027 (1st Cir.1977), cert. denied, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978). See also Hensley, 461 U.S. at 433, 103 S.Ct. at 1939 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."); Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 952 (1st Cir. 1984) ("[T]he absence of detailed contemporaneous time records, except in extraor-

dinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance.") (emphasis added); Zitnay, 590 F.Supp. at 984 ("The court may reduce or exclude time which is not specifically documented ..."); Chrapliwy v. Uniroyal, 583 F.Supp. 40, 47 (N.D.Ind. 1983) ("Inadequate detail in time records preclude this Court and opposing counsel from determining the reasonableness of the hours spent on particular tasks and whether the hours spent by attorneys were duplicative. In major litigation, such as the present case where numerous attorneys are involved, the possibility of duplication is substantial.... Any ambiguities arising out of poor time records should be resolved against the applicant."); In Re Fine Paper Antitrust Litigation, 98 F.R.D. 48, 81 (E.D.Pa.1983) ("Hundreds of hours which were described by vague or meaningless terms or insufficiently documented, will not be compensated."), aff'd in part, rev'd in part and remanded, 751 F.2d 562 (3d Cir. 1984) (remanding this aspect of the case for a listing of the specific hours that the court had found inadequately supported).

In examining the submitted time records of the 16 law firms that comprise Plaintiffs' counsel, the Court notes that these records do not uniformly comply with the First Circuit standard for "detailed contemporaneous time records."[22] Mindful of this standard, the Court will disallow billed hours where time records reveal an ab-

21. Several of these areas overlap in the time records. For example, the time entries for activity related to the motion for preliminary injunction contain numerous telephone and co-counsel conferences, and review of pleadings and newspapers. The Court will differentiate these entries where appropriate.

Many billing records group different activities within the same time entry. Although the Court recognizes that such grouping prevents an accurate breakdown of time for such activities, the Court will apportion time, based on the number of activities within each entry. Cf. Claus v. Goshert, 657 F.Supp. 237, 244 (N.D.Ind.1987) ("To facilitate the Court's review, where activities are grouped, time should be appropriately apportioned. Otherwise, the court is left with the choice of estimating a portion of the time for a particular activity, or excluding the entire entry. In the interest of justice, the court will opt for the second approach, emphasizing that

more detailed documentation would be wise and appropriate in the future.").

In future, the Court admonishes counsel to separate different activities by the discrete amount of time devoted to each activity. See Plaintiff's Exhibit 1, Exhibit K.

22. Plaintiffs' counsel asserts that they "have more then [sic] satisfied" the Hensley requirement, which states in part:

Plaintiff's counsel, of course is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures.

Plaintiffs' Post–Hearing Reply Memorandum at 6 (quoting Hensley, 461 U.S. at 437, 103 S.Ct. at 1941) (emphasis added). The Court disagrees. Plaintiffs' counsel's billing records reveal several instances of time entries that fail to "identify the general subject matter." See infra note 23.

sence of detailed and specific accounting because it is impossible for the Court to determine the "reasonableness" of the charged fees. *Cf. Zitnay,* 590 F.Supp. at 985 ("The Court agrees with defendants that the records maintained ... fall woefully short of the standards set by *Hensley* and *Nadeau v. Helgemoe,* 581 F.2d 275 (1st Cir.1978). Many of their entries give no clue to the nature of the work done. But the Court can infer, from its own experience with the case, what the general subjects of such entries were, and *is confident that counsel have acted in good faith by listing only time actually spent in connection with the present action.*") (emphasis added and footnote omitted). The Court has determined that Plaintiffs' counsel have inadequately documented a total of 33.01 hours, for a total of $9,424.40, which the Court will disallow.[23]

### b. Preparing Complaints and Other Initial Activity

Plaintiffs' counsel billed a total of $29,231.53, based on 126.12 hours, for the researching, drafting, and reviewing of the complaints in this case, as well as other initial activity, such as document request and production, initial correspondence, and other activities.[24] In examining the time records of the several firms, the Court finds that duplicative and excessive activity exists among these firms that should not be billed. In exercising its independent billing judgment, the Court will disallow 80% of this billed activity, for a total disallowance of $23,385.22.[25]

### c. Motions

#### 1. Motion for Preliminary Injunction

■ The most egregious example of Plaintiffs' counsel's overbilling involves over 900 hours billed by 20 lawyers from 11 law firms for Plaintiffs' motion for a preliminary injunction, which involved a 56–page initial brief filed on January 17, 1990,[26] and a 31–page reply brief that was never filed.[27] Based on the time records,[28] the Court has determined that Plaintiffs' counsel have billed a total of $226,875.30, totalling 917.32 hours, for this motion.[29] In evaluating the vast amount of time devoted to this motion, the Court is "forcefully reminded of the court's admonition" against "'exceed[ing] the bounds of reasonable effort.'" *Ricci v. Key Bancshares of Maine, Inc.,* 111 F.R.D. 369, 379 (D.Me. 1986) (quoting *Pilkington v. Bevilacqua,* 632 F.2d 922, 925 (1st Cir.1980)). In this light, the Court finds that billing over 900 hours on a single motion is grossly excessive.[30] As Amicus Curiae Maine noted: "The scope of this effort is particularly breathtaking since the plaintiffs' counsel had available to them hundreds of pages of briefs from similar litigation in which they were counsel and the bidder was represented by one of the premier corporate firms in

---

**23.** *See* Appendix 2.

**24.** *See* Appendix 3.

**25.** The Court will also disallow the following entries:
A total of $1,140.00, based on 4 hours, billed by Robert Frutkin, a partner at Berger & Montague, P.C., for "consid amend comp," dated October 16, 1989. This date is well before this case was actually commenced around October 31, 1989. *See* Plaintiffs' Exhibit B, Exhibit B, exhibit b.
A total of $1,072.50, based on 8.25 hours, billed by Dana Roth, an associate at the Milberg Weiss firm, for a document request that had been previously served on November 9, 1989, prior to the dates of her billing entries of 11/13/89 & 11/14/89. *See* Plaintiffs' Exhibit B, Exhibit H, exhibit C; Plaintiffs' Post–Hearing Reply Memorandum, Exhibit F, ¶¶ 7–8; H.R. at 221.

**26.** *See* Appendix 4.

**27.** *See* Appendix 5.

**28.** *See also* H.R. at 206, 225, 228.

**29.** *See* Appendices 4 & 5.

**30.** In *Furtado v. Bishop,* 635 F.2d 915 (1st Cir. 1980), the First Circuit Court of Appeals reduced by one half the 210.8 hours sought by three attorneys for preparing an appellate brief that cited 127 cases and extended over 93 pages and that addressed a number of difficult questions in an uncharted area. *Id.* at 923. The Court reduced the billed hours "to reflect possible duplication of effort and diseconomies of committee authorship that may occur in a case where there is no demonstration to the contrary." *Id.*

the country." Amicus Curiae Memorandum at 37.[31]

Here, the Court finds that Plaintiffs' counsel have made no showing that their motion for a preliminary injunction, which was never acted upon by the Court, had any material bearing on the outcome of this litigation. Moreover, the vast number of hours allegedly devoted to this motion is belied by the availability of similar briefs in other similar litigation. *See* H.R. at 229–32; Government Exhibits 12–16. As a result, the Court concludes that it would be unreasonable to compensate Plaintiffs' counsel for all of their billed time in this regard, particularly in light of its clear excessiveness. Therefore, the Court will disallow all but 10% of the billings charged for the preparation of the initial brief,[32] for a total disallowance of $127,457.10. In addition, the Court will disallow all of the attorneys' fees, totalling $85,256.30, for activity related to the *unfiled* reply brief, which the Court concludes had no bearing whatsoever on this litigation. In sum, the Court will disallow a total of $212,713.40 for the preparation of the motion for a preliminary injunction, including the reply brief, resulting in a total allowance of $14,161.90.[33]

2. Motion for Partial Summary Judgment

 Plaintiffs' counsel filed a Motion for Partial Summary Judgment on December 6, 1989 that was virtually identical to a Motion for Partial Summary Judgment filed by Georgia–Pacific on December 4, 1989. *See* H.R. at 99–100.[34] Both parties filed Reply Memoranda on December 18, 1989.[35] These summary judgment motions were denied by the Court on February 8, 1990. In light of the fact that the initial brief filed by Plaintiffs' counsel was virtually identical to that filed by Georgia–Pacific, the Court will disallow attorneys' fees billed by Plaintiffs' counsel for alleged time devoted to such motion.[36]

### d. Telephone Conferences

Courts have routinely reduced or disallowed attorneys' fees generated by telephone conferences. *See, e.g., In re Olson,* 884 F.2d 1415, 1428 (D.C.Cir.1989) (Courts have disallowed billings, based on "multitudinous billing entries, included among other entries for a particular day, that wholly fail to state, or even to make any reference to, the subject discussed at a conference, meeting or telephone conference.") (footnote omitted); *Hart v. Bourque,* 798 F.2d 519, 523 (1st Cir.1986) (165 hours of telephone calls was excessive and duplicative); *Claus,* 657 F.Supp. at 245 ("The court … will eliminate the .4 hours logged on December 14, 1984 [telephone conference regarding pretrial conference] for inadequate

---

**31.** With respect to the availability of copies of such briefs, both initial and reply, in other litigations involving motions for preliminary injunctions mandating redemption of the poison pill, the State of Maine introduced into evidence during the hearing two letters dated December 26, 1989, and January 18, 1990, respectively, from Steven Schulman to Laurence Paskowitz. *See* Government Exhibits 12–13. *See also* Government Exhibits 14–16.

**32.** Although the Court has previously reviewed and analyzed this initial brief, it notes that the sealed document is no longer in the record.

**33.** In addition, the Court will disallow a total of $6,238.50, based on billings for a related motion to unseal. *See* Appendix 4.

**34.** Nonetheless, Mr. Oestreich had filed an affidavit, stating that the "Shareholder Plaintiffs did not merely parrot the argument made by Georgia–Pacific." *See* Affidavit of Stephen D. Oestreich in Support of Plaintiffs' Motion to Reopen Judgment and in Support of Plaintiffs' Renewed Application for an Award of Attorneys' Fees and Expenses, ¶ 39, at 23; H.R. at 98–100.

**35.** In examining these two briefs, the Court finds that, in contrast to the initial briefs, these reply briefs are not identical. *See also* Plaintiffs' Post–Hearing Reply Memorandum, Exhibit F, ¶ 4; H.R. at 223. Therefore, the Court will not disallow the 62.25 hours billed by the Milberg Weiss firm (Schulman: 24.0 hours; Roth: 38.25) in researching and drafting this reply brief. In addition, the Court will not disallow the one hour billed by Attorney Frutkin on December 17, 1989. *See* Plaintiffs' Exhibit B, Exhibit B.

**36.** The Court will disallow for billed time on this motion as follows: 4 hours billed by Mr. Oestreich on December 5, 1989, totalling $1,400; and 1.5 hours billed by Mr. Newman on December 6, 1989, totalling $195 (the Court will allow .5 hours for filing and service of the motion), for a total disallowance of $1,595.

documentation."); *Chrapliwy*, 583 F.Supp. at 48 ("The sparseness of Mick's telephone records do effectively preclude this Court and opposing counsel from determining the propriety of 50 hours of phone calls.... As such, this Court feels that a reduction of 5 hours will eliminate any surplusage from Mick's time records yet adequately compensate Mick for hours properly spent on the phone.")

Here, Plaintiffs' counsel have provided "sparse" time records for the 122.946 hours in billed telephone calls, totalling $27,362.07,[37] which the Court will reduce to avoid duplication, "surplusage," and wrongful billing. To this end, the Court has reduced by 80% such billed hours. Therefore, the Court will disallow a total of $21,889.66 for telephone conferences.

### e. Co–Counsel Conferences

■ Courts have also disallowed or reduced fees for co-counsel conferences. *See, e.g., In re Olson*, 884 F.2d at 1429 ("The attorneys also engaged in a plethora of conferences, most often denoted simply as 'strategy' conferences, consuming the time of several attorneys who bill at very high rates. The hourly rates charged were of such a magnitude as to indicate that the attorney should have been able to decide on the proper strategy without the great number of strategy conferences attended by numerous firm lawyers."); *Mokover v. Neco Enterprises, Inc.*, 785 F.Supp. 1083, 1090 (D.R.I.1992) ("[T]here are seemingly endless hours billed for 'conferences with co-counsel' in a case whose simplicity does not even in the first instant warrant the replication of co-counsel involved. This duplication of effort requires that the number of hours charged be reduced to reflect superfluous and unwarranted effort."); *Claus*, 657 F.Supp. at 244 ("With respect to conferences, at a minimum, the subject matter and parties should be identified.").

Here, with respect to co-counsel conferences, the Court will adopt the reasoning of the *Mokover* court:

Given the fact that there was unquestionably unnecessary duplication of effort, if only on the basis of the number of law firms involved, and additionally that the vagueness of the entries in time records made it impossible to identify specific duplication, a reduction of 20% based on this Court's experience is minimally required.

785 F.Supp. at 1090. The Court has determined that Plaintiffs' counsel billed a total of 77.1025 hours in the amount of $18,582.18 for co-counsel conferences.[38] Unlike the *Mokover* court, this Court will disallow 80% of this billed amount, for a total disallowance of $14,865.74.

### f. Document Review

■ With respect to the review of various materials, including documents, pleadings, and newspapers, notably the *Wall Street Journal* ("*WSJ*"), the Court finds that hours billed on this basis are both duplicative and excessive because the time records reveal that several firms were reviewing the same materials. As Amicus Curiae Maine noted: "Although dozens of lawyers from 16 firms may have thought it necessary to review every piece of paper that crossed their desks during this takeover, that does not mean that it is reasonable to compensate each of them for these activities." Amicus Curiae's Memorandum at 38–39. *See also In re Fine Paper Antitrust Litigation*, 98 F.R.D. at 81 (disallowing "read and review time" for reading and reviewing documents for which the attorneys were not responsible); *Mokover*, 785 F.Supp. at 1088 ("Although Plaintiffs urge that there was an allocation of responsibility to prevent duplication, it is clear that each of the law firms expended substantial time to review what the other firms were doing, if only to remain current with the proceeding.").

The Court agrees. The Court has determined that Plaintiffs' counsel billed a total of 248.202 hours for review of pleadings and documents, for a total of $56,942.26.[39]

---

37. *See* Appendix 6.

38. *See* Appendix 7.

39. *See* Appendix 8.

To adjust for apparent duplication and excessiveness, the Court will reduce all such hours by 80%, for a total disallowance of $45,553.81 for review of documents and pleadings by Plaintiffs' counsel.

Although Plaintiffs' counsel testified that their monitoring of the case included reading the *WSJ*, the Court finds that they should not be fully compensated for time spent in duplicative activity among several of the law firms. Therefore, the Court will disallow 80% of amount billed, totalling $8,583.11, for reading the *WSJ* and other newspapers,[40] for a total disallowance of $6,866.49.[41]

### g. Depositions

 Plaintiffs' counsel have billed over 500 hours, totalling $127,596.73,[42] in relation to the depositions taken by Georgia-Pacific and Great Northern, some of which involved Georgia-Pacific witnesses.[43]

---

**40.** *See* Appendix 9.

**41.** The Court will also disallow all billings related to "fax" transmissions, for a total of $780.85. Such transmissions can be handled by firm secretaries or paralegals. The Court finds unacceptable that Plaintiffs' counsel, particularly partners, have billed for such activity. *See* Appendix 10.

**42.** *See* Appendix 11.

**43.** All but one of the depositions were held in New York. Nonetheless, Plaintiffs' counsel frequently drew upon counsel from Philadelphia-

and Chicago-based firms to assist in preparing for, attending, and digesting the depositions, thereby further escalating attorneys' fees and expenses for travel. *See* Plaintiff's Exhibit A; Plaintiff's Exhibit B; Plaintiff's Exhibit C; Plaintiff's Exhibit E; Plaintiff's Exhibit G; Plaintiff's Exhibit J. The Court finds the use of such out-of-town counsel for New York-based depositions to be needlessly extravagant and wasteful, particularly where such depositions played no significant role in this litigation.

Out-of-town counsel were used in the following depositions:

| | |
|---|---|
| Airington, Harold L.– | Baskin, Server, Burke & Weinstein (Chicago) 0 questions |
| Dillaway, Walden– | Law Offices of Frederic F. Brace (Chicago) 8 questions |
| Nesbeda, Eugene P.– | Berger & Montague, P.C. (Philadelphia) 0 questions |
| Pace, Norma– | Berger & Montague, P.C. (Philadelphia) 0 questions |
| Paine, Peter S., Jr.– | Schiffrin & Craig, Ltd. (Chicago) 3 questions |
| Taylor, Raymond H.– | Law Offices of Frederic F. Brace (Chicago) 47 questions |
| Tolar, Carroll T.– | Berger & Montague, P.C. (Philadelphia) 0 questions |
| Van Meter, James C.– | Berger & Montague, P.C. (Philadelphia) 0 questions |
| Veneman, Gerald– | Berger & Montague, P.C. (Philadelphia) 0 questions |

One deposition, that of Keith Miller, was conducted in Washington, D.C.

The Court finds that, where New York counsel was available, the use of such out-of-state

Plaintiffs' counsel did not ask questions in 16 of the 26 depositions that were conducted by Georgia–Pacific and Great Northern. *See* H.R. at 126; Government Exhibit 1. Of those 10 depositions in which they did ask questions, Plaintiffs' counsel asked fewer than 15 questions in 8 of them. *See* Government Exhibit 1.[44] They assert that their presence was necessary at all of the depositions because they served a "monitoring" role that required them to "step in" and take over the depositions, when necessary. *See* Plaintiffs' Reply Memorandum at 15. In effect, they deem irrelevant the fact that they did not ask questions in the majority of the depositions.

The Court disagrees. Amicus Curiae Maine asserts that "the plaintiffs' counsel were not much of a factor in the vast majority of these depositions." Amicus Curiae Memorandum at 12. The testimony at the hearing lent credence to that assertion. Specifically, the only deposition in which Plaintiffs' counsel's contributions were testified to be of any import was that of Edward Mule. *See* H.R. at 160–61; 182–83. In all others, Plaintiffs' counsel either observed or asked limited questions, a role that resulted in exorbitant attorney billings but yielded no discernible benefit.

Plaintiffs' counsel noted that "[t]he deposition testimony obtained by Shareholder Plaintiffs later proved invaluable in drafting papers in support of the Shareholder Plaintiffs' motion for a preliminary injunction." *See* Plaintiffs' Memorandum of Law in Support of Application After Remand For Attorneys' Fees and Reimbursement of Expenses ("Plaintiffs' Memorandum") at 11. The Court agrees that these depositions seemed most utilized by Plaintiffs' counsel in that motion.[45] Given that the Court allowed only 10% of the attorneys' fees generated with respect to the initial brief for the shareholder plaintiffs' preliminary injunction motion because of its limited value, the Court similarly will allow only 10% of the attorneys' fees generated in these depositions.[46] In total, the Court will disallow $107,288.31 in deposition-related attorneys' fees.[47]

#### h. Activity after February 20, 1990

■ Plaintiffs' counsel assert that they "achieved success on February 13, 1990 ... when Great Northern announced that it was for sale to the highest bidder." Plaintiffs' Memorandum at 4; H.R. at 79. Yet they also seek compensation for their work after that date, which, according to Amicus Curiae Maine, represents approximately one-quarter of all of the time sought by Plaintiffs' counsel. *See* Appendix to Amicus Curiae Maine's Memorandum Concerning Plaintiffs' Counsel's Attorney Fee Application, Exhibit S. Amicus Curiae Maine states that Plaintiffs' counsel probably cannot recover any fees for any work performed after that date. *See* Amicus Curiae Memorandum at 41. Alternatively, it argues that they should not be entitled to compensation for any work performed after February 23, 1990, when Georgia–Pacific agreed to assume liability for any fees

counsel was unnecessary, thereby contributing to the wasteful and excessive fees (and expenses) generated in this matter. Therefore, even had the Court decided against disallowing the majority of deposition-related attorneys' fees, it would have disallowed those fees generated by out-of-state counsel.

**44.** Put differently:

"[I]n four cases, the plaintiffs' counsel asked less than 10 pages of questions; in four cases, the plaintiffs' counsel asked 10 to 20 pages of questions; and in only two cases did the plaintiffs' counsel ask more than 20 pages of questions."

Amicus Curiae Memorandum at 13 n. 17.

**45.** The annexed exhibits included excerpts from the deposition transcripts of Ballard, Crump, Hahn, Laidig, Mule, McNutt, Rakowski, Van Meter, and Wright. In addition, they included exhibits from the depositions of Airington, Ballard, Laidig, Mule, Van Meter, and Wright. *See* Affidavit of Stephen D. Oestreich in Support of the Shareholder Plaintiffs' Motion for a Preliminary Injunction at 2–3.

**46.** The Court will allow 40% of the attorneys' fees, however, with respect to the Mule deposition, because of its value demonstrated at the hearing. *See* Appendix 11.

**47.** This total disallowance reflects a disallowance of $15,097.50 for the Mule deposition and a disallowance of $92,190.81 for the rest of the depositions.

ordered by this Court (up to a cap of $2,000,000). *Id.;* H.R. at 136, 166.

The Court concludes that Plaintiffs' counsel are *not* entitled to recover for any work performed after February 20, 1990, when a merger agreement was entered into between Georgia–Pacific and Great Northern, *see* H.R. at 213–14, except for reasonable activity pertaining to fees. Plaintiffs' counsel, no doubt, needed to engage in some "close up" activity but, once again, they demonstrate a lack of billing judgment in billing for such work. *See* H.R. at 212–13; *Hart,* 798 F.2d at 523 (Court upheld elimination of time "spent doing extensive legal research when the parties were on the verge of reaching a settlement"). They have wrongly billed for post-February 20, 1990, nonfees activity, such as reviewing documents and newspapers, working on settlement drafts, and holding telephone and co-counsel conferences. Accordingly, the Court will disallow all such time, for a total disallowance of $30,957.95.[48]

#### i. *Preparation of Application for Fees*

██ The Court has previously disallowed a portion of fee application-related activity in fee-shifting cases because it has found that such activity does not require the same level of expertise or skill as legal work related to substantive legal claims. *See, e.g., Zitnay,* 590 F.Supp. at 986 (Court applied a rate of $35 per hour [as compared with $45 per hour] to the time the attorney documented for pursuing his fee applications). *Cf. Auburn Police Union v. Tierney,* 762 F.Supp. 3, 5 (D.Me.1991) ("The Court is satisfied that a total hourly allocation of 5 hours of Mr. Jennings' time at his regular hourly rate of $120 is a fair and reasonable allowance for time reasonably to be devoted by competent and diligent counsel to the preparation of the application for fees in this matter.").

In non fee-shifting cases where the fees are based on an equitable exception "which imposes liability for the fee upon the beneficiaries of the litigation rather than on the opponent," "fees on fees" are not generally awarded. 2 M. Derfner & A. Wolf, *supra,*

¶ 16.02[3], at 16–29. The rationale for this distinction is as follows:

> The rationale behind the rule permitting awards of attorneys' fees out of the [common] fund … is that the attorney's services benefit the fund by creating, increasing or preserving it … [A]n attorney's time expended in connection with the fee application or a fee appeal does not benefit the fund … In fact, it is at that point that the attorney's interest becomes *adverse* to the interest of the class which he represents … Statutorily authorized fees are not paid out of the plaintiffs' recovery, and the attorney in seeking his fee is not acting in any sense adversely to the plaintiffs' interest.

*Id.,* at 16–30 (quoting *Prandini v. National Tea Co.,* 585 F.2d 47, 52–53 (3d Cir.1978) (emphasis in original).

Here, although the fees in this case are not statutorily authorized, "this case is analogous to one involving a statutorily authorized attorneys' fee award." *Pawlak v. Greenawalt,* 713 F.2d 972, 983 (3d Cir. 1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 172 (1984). That is, the fees are not being paid out of any recovery on the part of Plaintiffs. Hence, the rationale for no "fees on fees" award under the equitable exception does not fit the circumstances of this case. As a result, the Court will not automatically reject any award of "fees on fees" in this case. *Cf. Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 111 (3d Cir.1976) ("[W]e accept the prevailing rule for litigation involving the competing interests of claimants to a common fund. There being no benefit to the fund from services performed by appellees in connection with their fee application, there should be no attorneys' fee award from the fund for those services.") (citation omitted).

The Court will, however, evaluate the *reasonable* compensation for such activity. "[F]ees on fees work is subjected to the same type of scrutiny as is work on the merits, and courts do not hesitate to cut compensable hours to account for such fac-

---

**48.** *See* Appendix 12.

tors as excessiveness, lack of success, and unnecessary work." 2 M. Derfner & A. Wolf, *supra*, ¶ 16.02[3], at 16–34. For example, "where the amount of time spent pursuing fees is large compared to the amount of time spent on the merits of the litigation, the hours allowed on the fee may be substantially reduced." *Id. See also Barnett v. Pritzker*, 73 F.R.D. 430, 433 (S.D.N.Y.1977) ("We find their claim of 40 hours for this [fee] work excessive in view of their total of only 276.5 hours for other activities.").

The Court has determined that Plaintiffs' counsel devoted a total of 291.616 hours and incurred attorneys' fees totalling $69,-024.14 in their preparation of the application for fees.[49] This figure represents 10% of the lodestar in attorneys' fees sought by Plaintiffs' counsel. To ensure reasonable compensation, the Court will allow reimbursement for only a portion of such time. In applying its past reasoning in reducing attorneys' fees for fee-related activity,[50] the Court will disallow 40% of this requested amount as excessive, for a total disallowance of $27,609.66.

### j. Paralegals

■ Plaintiffs' counsel have charged $21,507.25 for 271.45 hours of paralegal time at "market rates."[51] As the Court has previously noted:

This Court does not permit such charges to be the subject of reimbursement or of allowance of counsel fees generally since the Court is of the view that such charges are properly includable in firm overhead. The individuals for whom the charges are made are not fully licensed professionals and much of their time and effort is duplicated by the supervisory and review roles of more experienced, licensed counsel in making use of their work product.

*Auburn Police Union*, 762 F.Supp. at 5.

The Court continues to have grave concern over the practice of compensating fee petitioners on the basis of an hourly billing rate for the time that paralegals have worked on cases. "[T]he current practice is almost invariably to compensate a fee petitioner for the time paralegals ... have worked on the case." 2 M. Derfner & A. Wolf, *supra*, ¶ 16.02[2][g], at 16–26. *See also Jenkins*, 491 U.S. at 284–89, 109 S.Ct. at 2469–74. To the extent that paralegals are allowed to perform work that constitutes "the practice of law" under Maine law, such practice is inconsistent with Maine law, which states in pertinent part:

No person may practice law or profess to practice law within the State or before its courts, or demand or receive any remuneration for those services rendered in this State, unless that person has been admitted to the bar of this State ... or unless he has been admitted to try cases in the courts of this State under section 802.

4 M.R.S.A. section 807(1) (Supp.1991). The Maine statute states that this section "shall not be construed to apply to ... Practice before any Federal Court *by any person admitted to practice therein* ...," *Id.* § 807(3)(A). This language makes the statute inapplicable to *only* those "admitted to practice" in this Court. Paralegals are not such persons, so that statutory prohibition applies to them. Therefore, reimbursement for such services provided by paralegals would be wholly inappropriate.

Accordingly, the Court will not award attorneys' fees for paralegals who have been billed at market rates. The denial of such fees results in a total disallowance of $21,157.25.

### k. Travel Time

■ Finally, with respect to travel time, "[t]his Court does not permit travel time to be recovered at anything approaching a usual billing rate." *Auburn Police Union*,

---

49. *See* Appendix 13.

50. *See Auburn Police Union*, 762 F.Supp. at 5 ("The Court is satisfied, having carefully reviewed and worked with the fee application materials, that the allocation is excessive in terms of reasonable allocation of time to the function in question.").

51. *See* Appendix 14.

762 F.Supp. at 4. *See also Hart,* 798 F.2d at 523 (Court upheld district court's elimination of time spent traveling as "unnecessary" time); *Furtado,* 635 F.2d at 922 ("[W]e are disinclined to compensate an attorney at professional rates for travel time …").[52]

Here, Plaintiffs' counsel have billed at their normal hourly rates for travel time to and from depositions held in New York City, hearings and conferences held in Portland, Maine, and, in one instance, a law library. *See* H.R. at 127.[53] Therefore, in light of *Auburn Police Union,* the Court will allow its normal amount of $10 per hour for travel time for those counsel who billed a total of $5,169.00 for travel time,[54] for a total disallowance of $4,958.00, based on 31.1 hours of allowed travel time.[55]

In sum, had the Court not denied all attorneys' fees to Plaintiffs' counsel, it would have disallowed a total of $535,155.40, based on its reduction of billed hours and hourly rates. As a result, the Court would have granted a total lodestar of $150,936.60, as compared with Plaintiffs' counsel's request of $686,092, representing approximately 22% of their requested lodestar.[56]

### iii. *Multiplier*

The First Circuit Court of Appeals noted in reference to this case that "the lodestar calculation, when obtained, will be subject to possible enhancement or diminution by the court *if* it determines that a multiplier or divider should be applied." *Weinberger,* 925 F.2d at 529 (emphasis added). "The bonus or multiplier that enhances a lodestar is *not* a figure that increases a reasonable fee, but a figure that brings an unreasonably low fee up to a level where it more nearly represents the true market value of an attorney's work." 2 M. Derfner & A. Wolf, *supra,* ¶ 16.04[1], at 16–122 (emphasis in original). Plaintiffs' counsel have the burden of justifying that such a deviation from the lodestar is appropriate. *See Furtado,* 635 F.2d at 924; *Zitnay,* 590 F.Supp. at 984; 2 M. Derfner & A. Wolf, *supra,* ¶ 16.04[1], at 16–126.

Here, they seek a 292% multiplier. *See* Plaintiffs' Memorandum at 26.[57] For the reasons that follow, the Court finds that Plaintiffs' counsel have failed to satisfy their burden in demonstrating that a multiplier is justified in this case and, therefore, had the Court awarded attorneys' fees, it would not have adjusted the lodestar amount.

**52.** Moreover, this Court has held that "[t]ravel time is compensable at legal rates if legal services are performed during travel; travel time necessary to a case but during which legal services are not performed may be charged at a reduced rate." *Zitnay,* 590 F.Supp. at 986. *See also* 2 M. Derfner & A. Wolf, *supra,* ¶ 16.02[2][c], at 16–21—16–22 ("Some courts have required more than that the attorney was necessarily out of his office while traveling and have denied fees where there was no indication on the petitioning attorney's time sheets that work was performed while the attorney was en route, or where there was no evidence that the petitioning attorney did not work on other cases while en route.") (footnote omitted). In *Zitnay,* fee petitioners did not show that they were doing legal work for the plaintiffs during the hours they listed as travel time and the Court, therefore, allowed only $10 per hour (as compared with $55 or $45 per hour) as a reasonable rate for the time the petitioners spent traveling. 590 F.Supp. at 986, 987.

**53.** One firm also billed 3.5 hours for a paralegal's "travel to association of the bar research," *see* Milberg Weiss Bershad Specthrie & Lerach,

Plaintiff's Exhibit H, but the Court has already disallowed all paralegal hours.

**54.** Similar to the petitioners in *Zitnay,* Plaintiffs' counsel have failed to show that they were engaged in legal work for Plaintiffs during their billed travel time.

**55.** *See* Appendix 15.

**56.** The Court would have allowed reimbursement for the remaining few billed activities not covered within any of the aforementioned categories of activities that have been discussed above.

**57.** The Court notes that the requested multiplier of 292% is the result of an arbitrary mathematical calculation to ensure that Plaintiffs' counsel could seek the maximum cap of $2,000,000 in attorneys' fees and expenses that it negotiated in the clear sailing agreement. It is not based on any substantive grounds involving contingency, quality of representation, or any other factor that courts consider in evaluating the appropriateness of a multiplier.

To determine whether a multiplier is warranted, courts have relied upon several factors, including the contingent nature of the fee,[58] the quality of representation, and any exceptional (and unexpected) results obtained. *See, e.g., Furtado,* 635 F.2d at 920. In addressing each of these factors, the Court finds that none of them, either singularly or collectively, justifies a multiplier in this case.

First, with respect to the contingent nature of the fee, "courts have historically found that, in order to determine whether a contingency enhancement should be applied to a lodestar or an unadjusted rate, it is necessary to assess the degree of the risk of litigation; that is, how likely it was, at the beginning of the suit, that the litigation would be unsuccessful, and result in no fee.

If there was little risk of loss, the court could award a very small contingency enhancement, or none at all." 2 M. Derfner & A. Wolf, *supra,* ¶ 16.04[4], at 16–157.[59]

Here, the Court acknowledges that Plaintiffs' counsel operated under a contingency basis.[60] Based on the *ex ante* evidence presented in the hearing,[61] the Court finds, however, that, despite Plaintiffs' counsel's contrary representations, the risks in this litigation were very limited. *See* H.R. at 53–55, 66 (lines 17–22), 68, 161–62, 170–71, 232–37; Government Exhibits 2, 7. The testimony of Mr. Baskin is particularly persuasive in this regard:

> *[T]his was a fully financed non-junk bond strategic acquisition on the part of the offeror who is going to acquire a company and not rip it apart or had*

**58.** Courts have held that the "contingent fee risk is the single most important factor in awarding a multiplier; perhaps it is the only remaining valid basis now recognized by the caselaw of multipliers." *In Re Union Carbide Corp. Consumer Products Business Securities Litigation,* 724 F.Supp. 160, 164 (S.D.N.Y.1989). *See also In re "Agent Orange" Product Liability Litigation,* 818 F.2d 226, 236 (2d Cir.1987).

**59.** The United States Supreme Court recently held in *City of Burlington v. Dague,* —— U.S. ——, ——, 112 S.Ct. 2638, 2639, 120 L.Ed.2d 449 60 U.S.L.W. 4717, 4717 (U.S. June 24, 1992), that the enhancement for contingency of a fee award beyond the lodestar amount is not permitted under the fee-shifting statutes at issue. The Court noted that "the risk of loss in a particular case is the product of two factors: (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits." *Id.* at ——, 112 S.Ct. at 2641. The second factor is ordinarily reflected in the lodestar—"either in the higher number of hours expended to overcome the difficulty, or in the higher hourly rate of the attorney skilled and experienced enough to do so." *Id.* at ——, 112 S.Ct. at 2641. With respect to the first factor, the Supreme Court noted:

> The first factor ... is not reflected in the lodestar, but there are good reasons why it should play no part in the calculation of the award. It is, of course, a factor that *always* exists (no claim has a 100% chance of success), so that computation of the lodestar would never end the court's inquiry in contingent-fee cases. Moreover, the consequence of awarding contingency enhancement to take account of this "merits" factor would be to provide attorneys with the same incentive to

bring relatively meritless claims as relatively meritorious ones.
> *Id.*

The Supreme Court's recent pronouncement has no direct bearing on the instant case in that the Court cannot deny a contingency-based multiplier, based on the *Dague* opinion, because this case does not involve a fee-shifting statute. Nonetheless, the *Dague* Court's policy rationales in denying a contingency-based multiplier seems to be equally applicable here.

**60.** Plaintiffs' counsel criticize Amicus Curiae Maine for citing statutory fee-shifting cases to support its argument that a multiplier is not justified in this case. *See* Plaintiffs' Post–Hearing Reply Memorandum at 18. They argue that the rule in such cases, that "a multiplier is only awarded in special circumstances," is not applicable in a "fee-sharing" case. *See id.* Despite their protestation, Plaintiffs' counsel also cite fee-shifting cases. *See* Plaintiffs' Post Hearing Memorandum at 26.

In arguing that "[r]isk multipliers are virtually always awarded in common fund cases prosecuted on a contingent basis, such as here," *id.* at 28, 30–31, Plaintiffs' counsel also cite common fund or benefit cases. *Id.* at 30–31. The Court has already noted that the First Circuit Court of Appeals has concluded that this case is *not* a common fund or benefit case. Therefore, Plaintiffs' counsel's reliance on such cases in this regard is unavailing.

**61.** Courts have held that the riskiness of a case must be judged *ex ante,* rather than *ex post. See* Plaintiffs' Post Hearing Memorandum at 31 n. 22 (citing *Harman v. Lyphomed, Inc.,* 945 F.2d 969, 974–76 (7th Cir.1991)). In *Harman,* the court noted that "[t]his requires comparing the attorney's prospect for success with other cases of similar dimensions." 945 F.2d at 974.

*certainly no interest in green mail. This was a cash, fully financed offer from the beginning.* My perception was that the reality of Georgia–Pacific, and the nature of its financing coupled with Maine law that permitted the replacement of directors through special shareholder meetings benefitted us. If they did not eventually come around, I thought there was a likelihood of our prevailing on the securities issues.... I thought the risk of our being stopped was the antitrust litigation.... My perception was the principal risk was the antitrust litigation.

H.R. at 161–62 (emphasis added). He later testified under cross-examination:

As a general rule unless the offeree can come up with some legal theory to frustrate an all cash bidder, if the all cash bidder is offering a suitable premium, the shareholder usually is better off. Unless the offeree can come up with some legal way of derailing a transaction, and those are, in my experience, permanent show stoppers, to use a phrase, are not that common. So that *generally [in] an all cash fully financed transaction at a fair premium, the offeror would generally prevail.*

*Id.* at 170–71 (emphasis added). The Court finds Mr. Baskin's testimony highly probative in rebutting Plaintiffs' counsel's assertion that the contingent nature of the fee and the accompanying risks of litigation justified a multiplier.[62] Thus, the Court concludes that, even if a contingency-based multiplier may be *theoretically* available in

this type of case, such a multiplier is not justified here, based on the evidence in the record.

Next, with respect to quality of representation, courts have noted that a multiplier for quality should only be awarded for "an unusual degree of skill, superior or inferior, exhibited by counsel in the specific case before the court." *In Re Fine Paper Antitrust Litigation,* 98 F.R.D. at 81 (quoting *Silberman v. Bogle,* 683 F.2d 62, 64 (3d Cir.1982)). *See also Mashburn v. National Healthcare, Inc.,* 684 F.Supp. 679, 700, 702 (M.D.Ala.1988). In *In Re Fine Paper Antitrust Litigation,* the court concluded that "[n]o positive quality multiplier will be allowed. Under all the circumstances of the case, I am not persuaded that any counsel demonstrated such an unusually high degree of skill as would warrant compensation beyond that reflected in the hourly rates." *Id.* at 84. Here, the Court reaches a similar conclusion. It finds nothing "unusually good [in Plaintiffs' counsel's] ... performance above ... the skill already reflected in the hourly rates," *Furtado,* 635 F.2d at 920, to warrant an upward adjustment in the lodestar on this basis.[63]

Finally, with respect to the results obtained, the Court finds that the most that can be said about Plaintiffs' counsel's involvement in this litigation is that they may have been "a factor" in Great Northern's decision to auction the company. At the same time, the Court finds that several other factors played a far more significant role in this decision, notably Georgia–Pacif-

---

**62.** *Cf. Williamsburg Fair Housing Committee v. Ross–Rodney Housing Corp.,* 599 F.Supp. 509, 520 (S.D.N.Y.1984) ("[T]here was a significant possibility that the plaintiffs would not prevail. The issues raised were complex and the suit involved numerous parties with widely diverse interests to be protected. The case dealt with an unsettled area of the law, and both the law and facts were strongly contested. When the case was commenced, it was unclear that a satisfactory remedy could, in fact, be developed and implemented."); *Municipal Authority of Bloomsburg v. Pennsylvania,* 527 F.Supp. 982, 993–94 (M.D.Pa.1981) (Court identified several significant risk factors, including strong affirmative defenses, exhaustion of remedies defense, Eleventh Amendment problems, questions of first impression, unclear ability of class members to

recover damages against state officers in their official capacities in federal court); *In Re Cenco Inc. Securities Litigation,* 519 F.Supp. 322, 327 (N.D.Ill.1981) ("[T]he contingency factor here was very high and for this reason, dictates that plaintiffs' counsel deserves significantly greater compensation than they would have absent the high risk factors.").

**63.** Plaintiffs' counsel also raised "the standing of counsel" as a factor justifying a multiplier, *see* Plaintiffs' Post Hearing Memorandum at 39–40, but because their discussion of this factor overlaps significantly with that of "quality of representation," the Court will not address this factor separately.

ic's instrumental participation as the tender offeror. The Court cannot conclude that the "results obtained" in this litigation are attributable in any significant way to Plaintiffs' counsel's effort and, therefore, they cannot rely on this factor as a justification for a multiplier.[64]

In sum, the Court finds that Plaintiffs' counsel would not be entitled to any multiplier to the lodestar, if the Court had found that they were entitled to any attorneys' fees at all.

### iv. *Expenses*

■ Plaintiffs' counsel have the burden of persuasion as to the reasonableness of their expenses. *See Grendel's Den,* 749 F.2d at 956–57. The Court has customarily disallowed or reduced certain expenses, including computerized legal research, copying, telephone calls, postage, and travel, and it will do so here.[65]

First, with respect to computerized research, the Court has previously noted:

> The Court is well aware that it is a somewhat prevalent practice, where the client will permit it, for lawyers to seek reimbursement of the time charges made

by WESTLAW for research facilities. The Court, however, is satisfied that this is properly an item attributed to firm overhead. The Court assumes that the actual time of a lawyer utilizing the research computer facility is, in fact, booked at his normal hourly rate. The Court thinks it inappropriate and unreasonable to permit an overhead item of this type to be recovered in addition to recovery for the time of the lawyer who used the research facility.

*Auburn Police Union,* 762 F.Supp. at 5. *See also Winter v. Cerro Gordo County Conservation Board,* 925 F.2d 1069, 1074 (8th Cir.1991). Plaintiffs' counsel have offered no basis for the Court to alter its previous reasoning in this regard and, therefore, it will disallow all computerized legal research expenses, for a total disallowance of $5,219.86.[66]

Next, Plaintiffs' counsel seek a total of $14,414.91 in expenses related to photocopying, facsimile transmissions, Federal Express, and messenger services.[67] The Court will reduce by 80% such expenses, for a total of $11,531.93, based on its reasoning that the high charges in these areas

---

**64.** Plaintiffs' counsel identified other factors that they claimed justified a multiplier, including the benefit achieved, *see* Plaintiffs' Post Hearing Memorandum at 33–37, the complexity of the litigation, *see id.* at 38–39, and "public policy considerations," *see id.* at 40–43.

With respect to the benefit achieved, the Court has already noted that Plaintiffs' counsel failed to meet their burden in demonstrating that they were a substantial or material factor in the benefits to Great Northern shareholders that resulted from the tender offer litigation. Therefore, Plaintiffs' counsel cannot rely upon this factor as a basis for justifying a multiplier in their favor.

With respect to the litigation's complexity, some courts have held that complexity should not be a factor in enhancing a lodestar, "because [it is a] factor[ ] which increase[s] the time an attorney must spend, and [is] adequately compensated through increased time charges." 2 M. Derfner & A. Wolf, *supra,* ¶ 16.-04, at 16–175 n. 211 (citing *Donnell v. United States,* 682 F.2d 240 (D.C.Cir.1982), *cert. denied,* 459 U.S. 1204, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983), and *Wolf v. Frank,* 555 F.2d 1213 (5th Cir.1977)). Moreover, the Supreme Court recently alluded to the complexity factor in *Dague,* noting that the difficulty in establishing the merits of a case is ordinarily reflected in the lodestar, rather than as a factor of contingency.

*See* — U.S. at —, 112 S.Ct. at 2641. *See also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987).

With respect to public policy considerations, such considerations would warrant, if anything, a downward adjustment in the lodestar. The vast amounts of time and expense generated by attorneys in this particular shareholder litigation strike the Court as both frivolous and parasitic. Plaintiffs' counsel's so-called "monitoring" efforts resound with "shooting mice with a cannon." Plaintiffs' counsel launched an entire militia when, in this Court's view, the battle still would have been won even if Plaintiffs' counsel had limited themselves to a few local reserves. The rush to give every available counsel "a piece of the action" resulted in an unnecessary plethora of "skirmishers."

**65.** Plaintiffs' counsel also seeks reimbursement for other expenses, including court costs, *e.g.,* filing fees; obtaining documents (in the amount of $52.00), *see* Plaintiff's Exhibit J; and O.C.R.-N.Y. (scanner) in the amount of $44.00, *see* Plaintiff's Exhibit H. The Court will allow these expenses.

**66.** *See* Appendix 16A.

**67.** *See* Appendix 16B.

arise from the level of duplicative and wasteful activity among the several firms involved in this litigation. *See, e.g.,* H.R. at 223–24. Therefore, the Court will only allow a total of $2,882.98 for such expenses.

Similarly, the Court will reduce by 80% the telephone expenses in the amount of $2,468.04, for a total of $1,974.43. The Court will allow only a total of $493.61 for such expenses.[68] In addition, the Court will reduce by 80% all postal or delivery-related expenses, including postage, messenger and courier services, Federal Express and United Postal Service, which total $1,556.81, for a total disallowance of $1,245.45, thereby allowing only a total of $311.36.[69]

Plaintiffs' counsel also seek reimbursement for a total of $9,715.02 in transportation and travel-related expenses, including meals,[70] and lodging.[71] The Court will disallow a total of $9,552.33 for such expenses.[72] *See Winter,* 925 F.2d at 1074. Therefore, it will allow only a total of $162.69 for such expenses.

In addition to the aforementioned expenses, the Court will disallow various incidental expenses, including secretarial overtime in the amount of $1,349.79,[73] a special secretary in the amount of $2,479.08,[74] document retrieval in the amount of $1,167.34,[75] Velobind in the amount of $93.00,[76] and word processing in the amount of $633.96.[77] These incidental expenses result in a disallowance of $5,723.17.

In total, the Court would have disallowed a total of $36,240.07 of the $48,722.88 in expenses sought by Plaintiffs' counsel, for a total allowance of $12,482.81.[78]

In sum, if the Court had found that Plaintiffs' counsel were entitled to attor-

---

**68.** *See* Appendix 16C.

**69.** *See* Appendix 16D.

**70.** The Court was particularly struck by the expenses for meals incurred by Mr. Schulman of the Milberg Weiss. *See* Plaintiff's Exhibit H (Exhibit D). He seeks reimbursement for in excess of twenty lunches and/or dinners, sometimes seeking reimbursement for as many as four meals in one day. He may have worked up an enormous appetite recording the vast numbers of hours that he billed in this litigation, but the Court will not allow his meals to be subsidized. *See In Re Fine Paper Antitrust Litigation,* 98 F.R.D. at 85 ("I have scrutinized with particular care repeated charges for meals consumed at hometown restaurants and have disallowed those which appeared to have been arranged primarily for the benefit of the lawyer.").

The Court is struck by the failure of Mr. Schulman to address Amicus Curiae Maine's concerns regarding these expenses in his Post–Hearing Affidavit submitted as part of Plaintiffs' Post–Hearing Reply Memorandum.

**71.** The Court will allow the $129.69 charged by the Milberg Weiss firm for hotel accommodations incurred on December 20, 1989 in connection with this Court's December 21, 1989 hearing on Plaintiffs' partial summary judgment motion. *See* Plaintiffs' Post–Hearing Reply Memorandum, Exhibit F, ¶ 10 & exhibit A.

**72.** *See* Appendix 16E.

**73.** The following firms billed for secretarial overtime, which the Court will disallow.

| | |
|---|---|
| Law Offices of Curtis M. Trinko: | $ 383.42 |
| Wolf Popper Ross Wolf & Jones: | 966.37 |
| Total: | $1,349.79 |

**74.** The firm of Milberg Weiss Bershad Specthrie & Lerach billed a total of $2,479.08. *See* Plaintiff's Exhibit H.

**75.** The firm of Stull, Stull & Brody billed a total of $1,167.34 for "document retrieval." *See* Plaintiff's Exhibit L.

**76.** The firm of Wolf Popper Ross Wolf & Jones billed for Velobind in the amount of $93.00. *See* Plaintiff's Exhibit O.

**77.** The following firms billed for word processing:

| | |
|---|---|
| Milberg Weiss Bershad Specthrie & Lerach: | $155.61 |
| Law Offices of Curtis M. Trinko: | 478.35 |
| Total: | $633.96 |

**78.** This allowance includes a total of $7,524.85 in monies contributed by several law firms to a litigation fund controlled by the Wolf Popper law firm. *See* Plaintiffs' Post Hearing Memorandum at 22; H.R. at 55–56; 147–50.

The Court notes that discrepancies exist between Wolf Popper's accounting of the litigation fund, *see* Plaintiffs' Post Hearing Memorandum at 22, and the individual firms' affidavits, *see* Plaintiff's Exhibit 1, Exhibits B, G, and N. Therefore, the Court cannot determine with exactitude the specific law firms that contributed

neys' fees and expenses, it would have awarded a lodestar in the amount of $150,936.60, with *no* multiplier, and expenses in the amount of $12,482.81, for a total award of $163,419.41.[79]

## II. CONCLUSION

Plaintiffs' counsel have failed to meet their burden in demonstrating that their efforts materially or significantly contributed to Great Northern's decision to auction the company on February 13, 1990. Accordingly, Plaintiffs' counsel are entitled to *no* attorneys' fees or expenses in this litigation.

SO ORDERED.

## APPENDIX 1

| DATE | DOCKET NUMBER | GEORGIA PACIFIC | DOCKET NUMBER | WEINBERGER |
|---|---|---|---|---|
| **1989** | | | | |
| 10/31 | 1 | COMPLAINT for Declaratory Judgment filed Summons issued & given to counsel | | |
| 11/03 | | | 1 | COMPLAINT filed (photocopy) |
| | | | 2 | COMPLAINT filed |
| 11/08 | | | | Summons issued & given to counsel |
| 11/14 | 2 | ANSWER of Defendants filed | | |

to the fund, or the amounts so contributed. The Court also notes that Amicus Curiae Maine's Exhibit T fails to account for the $2,500 contributed to the fund by the Milberg Weiss firm (listed under Plaintiffs' Exhibit H, exhibit B, as "Assessments").

Monies from the fund totalling $8,445.42 apparently were disbursed by Wolf Popper for Manhattan Reporting Corp., Benjamin Reporting Service, Miller Reporting, P. Terry Reporting, and Attorney Photo Print. *Id.* Wolf Popper fails to detail these expenses, other than to list the name of the service and amount disbursed. Presumably, based on Mr. Oestreich's testimony, *see* H.R. at 148, these reporting services were used to prepare deposition transcripts and, in the case of P. Terry Reporting, for court hearings and conferences in Maine. Wolf Popper deducted the balance of the fund in the amount of $5,554.58 from its out-of-pocket expenses.

The Court would have allowed a total of $7,524.85 in litigation fund expenses to be awarded for reimbursement for reporter services although the Court notes that this figure for such services appears high. The Court would have excluded, however, the amount of $920.57 for Attorney Photo Print because the Court cannot ascertain whether that expense was reasonable. Mr. Oestreich's testimony suggests that such expense might have been related to "huge copying costs." *See* H.R. at 148. The Court has already disallowed Plaintiffs' counsel's (other) excessive photocopying costs by 80%. Moreover, the Court would not reimburse the $5,554.58 that Wolf Popper has already deducted from its out-of-pocket expenses.

79. Amicus Curiae Maine argues that, if the Court awards attorneys' fees and expenses to Plaintiffs' counsel, they should not be awarded a single aggregate fee award. *See* Amicus Curiae Memorandum in Opposition at 5–6. It speculates that such counsel may have entered into a separate fee-splitting arrangement among themselves but it admits that it has no evidence of such an arrangement. *Id.* at 6. Amicus Curiae Maine suggests that "any fees awarded to the plaintiffs' counsel be awarded to specific law firms and that the plaintiffs' counsel be ordered not to otherwise split or share any fees that are awarded." *Id.* Plaintiffs' counsel assert that courts have approved joint applications and have made single aggregate fee awards where counsel have jointly prosecuted the litigation with a minimum of duplication of effort. *See* Plaintiffs' Post Hearing Memorandum at 17 n. 11 (and cases cited therein).

If the Court had awarded attorneys' fees and expenses, it would find no basis for deviating from the general judicial trend of making a single aggregate fee award, as opposed to allocating fees to specific law firms. Therefore, the Court would have rejected Amicus Curiae Maine's proposal in this regard.

| DATE | DOCKET NUMBER | GEORGIA PACIFIC | DOCKET NUMBER | WEINBERGER |
|---|---|---|---|---|
| 11/15 | | | | Notices & Acks. of service, filed; service made 11/9/89 |
| 11/20 | | Consent MOTION for Leave to File Amended Complaint filed by parties; 11/21 Motion granted. For Court s/C. Berry, D. Clerk | | |
| 11/21 | 3 | AMENDED COMPLAINT filed by Pltf | | |
| 11/27 | 4 | APPLICATION of Pltfs for TRO and Prelim. Injunction filed | 3 | CONSOLIDATED AMENDED CLASS ACTION COMPLAINT filed by Pltfs; 1/4/90 Complaint withdrawn. See ltr of counsel. |
| 11/27 | 1M | MEMO of Pltf in support of application for TRO & injunctive relief filed | | |
| 11/28 | | Conf. of cnsl scheduled for 11/29/89 at 10 am before Carter, J. | | |
| 11/29 | | Conf. of cnsl had by Carter, J.; defs to respond to TRO, etc. by 12/5/89; Pltfs to Reply by 12/7/89; further conf. to be scheduled thereafter | | |
| 11/29 | 7 | ANSWER of defs. filed | 4 | ANSWER of Defts filed |
| 11/30 | 9 | PROCEDURAL ORDER filed by Carter, J. *ORDERED* def's response due 12/5/89; Pltfs' reply due 12/7/89; conf. of counsel 12/8/89 at noon | | |
| 12/01 | | | | Ack of Acceptance of Service filed by Deft |
| 12/04 | 10 | STIPULATION & ORDER Concerning Discovery And Schedule for Prelim. Injunction Mtns, Filed by parties & Carter, J (setting Schedule for discov- | | |

| DATE | DOCKET NUMBER | GEORGIA PACIFIC | DOCKET NUMBER | WEINBERGER |
|---|---|---|---|---|
| | | ery re Prelim. Injunct motions) | | |
| 12/04 | 11 | AMENDED ANSWER to Amended Complaint and COUNTERCLAIMS, filed by def. | | |
| 12/04 | 13 | MOTION of Pltf for Partial S/J filed; 1/16/90: *DENIED.* See Order of Carter, J. | | |
| 12/04 | 3M | Memo in Support of above mtn filed by pltf | | |
| 12/04 | 15 | MOTION of pltf for Expedited Hrg on Mtn for Partial S/J filed; Hearing held 12/21/89 | | |
| 12/05 | 16 | ORDER filed by Carter, J; pltf to respond to #12 by 12/7/89 at noon; mtn will be heard at conf. on 12/8/89 | | |
| 12/05 | | Conf. of counsel scheduled for 12/6/89 at 8:30 am before Carter, J. | | |
| 12/05 | 17 | OBJECTION of Defts to Mtn for TRO, etc., filed | | |
| 12/05 | 4M | MEMO of Defts in opposition to Mtn for TRO, etc. filed | | |
| 12/06 | | | 5 | ANSWER filed by Defts |
| 12/06 | | | 6 | MOTION of Pltfs for Partial S/J filed; 2/2/90—No action necessary. See Cnsl's ltr of 1/31/90. s/Carter, J. |
| 12/06 | | | 1M | MEMO in support of above mtn filed by Pltfs |
| 12/06 | | | 8 | MOTION of Pltfs for Expedited Hearing on Mtn for Partial S/J filed |
| 12/07 | | | 9 | MOTION of Pltfs for Consolidation filed (with 89– |

| DATE | DOCKET NUMBER | GEORGIA PACIFIC | DOCKET NUMBER | WEINBERGER |
|---|---|---|---|---|
| | | | | 0264–P) 1/4/90: Mtn withdrawn. See letter of counsel. |
| 12/08 | 21 | AFFIDAVIT of Edward Mule filed by Deft. | 10 | MOTION of State of Maine to Intervene filed; 12/28/89: No Obj. having been filed, Mtn granted per Local Rule 19(c). s/Carter, J. |
| 12/08 | | Conf. of cnsl had by Carter, J. Order to enter | | |
| 12/08 | 22 | SCHEDULING ORDER filed by Carter, J. Court GRANTS Pltf's Mtn for Expedited Hearing on Mtn for Partial S/J; Defts to file response by 12/13/89; Pltfs to reply by 12/18/89; hearing on Mtn on 12/21/89 at 9:30 am (EOD 12/8/89) (Hearing on Mtn for Partial S/J and Mtn for TRO) | | |
| 12/13 | 25 | OBJECTION of Defts to Mtn for Partial S/J filed | 11 | APPLICATION of Pltfs for a TRO and Prelim Injunction filed; 1/9/90—No action necessary. See Order Denying Pltf's Application dated 12/22/89 in CV 89–0264–P. s/Carter, J. |
| 12/13 | 7M | MEMO of Defs in Opposition to Mtn for Partial S/J filed | 12 | MOTION of Pltfs for Consolidation and inc. MEMO filed; 1/4/90: Mtn withdrawn. See letter of counsel. |
| 12/15 | | | 13 | OBJECTION of Defts to Mtn for Partial S/J filed |
| 12/18 | 28 | MOTION of Pltfs to Amend Complaint; 1/11/90 No Obj. having been filed, mtn GRANTED per Local Rule 19(c) s/Carter, J. | 3M | Pltf REPLY MEMO in Support of Mtn for Partial S/J |

| DATE | DOCKET NUMBER | GEORGIA PACIFIC | DOCKET NUMBER | WEINBERGER |
|------|---------------|-----------------|---------------|------------|
| 12/18 | 30 | REPLY of Pltfs to Counterclaim (SEALED) (12/20/89 Unsealed by stipulation) | | |
| 12/18 | 10M | G–P REPLY MEMO in Support of Mtn for Partial S/J | | |
| 12/21 | | Hearing had on Appl. for Prelim. Injunct. & on Mtn for Partial S/J. Matter taken under advisement by Carter, J. | | |
| 12/22 | 32 | ORDER Denying Pltfs' Appl. for TRO and Prelim. Injunct. filed by Carter, J. (EOD 12/22/89) | | |
| 12/29 | | | 15 | ANSWER of Intervenor State of Maine to Consolidated Amended Complaint filed |
| 1990 | | | | |
| 1/04 | 33 | MOTION of Deft. Great Northern for a Preliminary Injunction filed | 16 | MOTION of Pltfs for Consolidation with MEMO filed (With 89–0273–P & 89–0291–P) 1/4/90: Mtn and file reviewed this date. Decision on the within motion RESERVED to time of Final Pretrial Conf. So *ORDERED*. s/Carter, J. |
| 1/04 | 11M | MEMO of Deft Great Northern in support of Mtn for Prelim Injunction filed | 17 | Letter of Pltfs' counsel withdraw'g # 3, # 9 and # 12 filed |
| 1/05 | 35 | PROCEDURAL ORDER on Great Northern's Mtn for Prelim. Injunct. filed by Carter, J. Court declines to act *ex parte* on mtn; Pltf to respond in a timely manner pursuant to Local Rule 19; conf. of counsel to be scheduled after all filings are received. | | |

| DATE | DOCKET NUMBER | GEORGIA PACIFIC | DOCKET NUMBER | WEINBERGER |
|---|---|---|---|---|
| 1/09 | 37 | MOTION of Pltfs for Partial S/J filed; 2/8/90: Motion GRANTED. See Order of Carter, J. | | |
| 1/09 | 12M | MEMO in Support of above mtn filed | | |
| 1/11 | 44 | SECOND AMENDED COMPLAINT for Declaratory Judgment and Injunctive Relief filed | | |
| 1/11 | 45 | ANSWER of Defts to Second Amended Complaint and Counterclaims filed | | |
| 1/16 | 46 | MEMORANDUM and Order Denying Pltfs' Mtn for Partial S/J filed by Carter, J. *ORDERED* that Pltfs' Mtn for Partial S/J is *DENIED*. (Copies to counsel) | | |
| 1/17 | | | 20 | MOTION of Pltfs for Prelim. Injunction filed (UNDER SEAL) |
| 1/17 | | | 4M | MEMO of Pltfs in support of above mtn filed (UNDER SEAL) |
| 1/19 | 47 | OBJECTION of Pltfs to Mtn for Prelim. Injunction filed | | |
| 1/19 | 15M | MEMO of shareholder pltfs (from 89–0270–P) in opposition to Great Northern's Mtn for Prelim. Injunction filed (UNDER SEAL) | | |
| 1/19 | 48 | OBJECTION of Defts to Deft's Mtn for Partial S/J filed | | |
| 1/19 | 16M | MEMO of Defts in Opposition to Pltf's Mtn for Partial S/J filed with Compendium of Statutory Materials | | |
| 1/19 | 17M | MEMO of Pltf in Opposition to Def's Mtn for Prelim. Injunction filed | | |

| DATE | DOCKET NUMBER | GEORGIA PACIFIC | DOCKET NUMBER | WEINBERGER |
|---|---|---|---|---|
| 1/22 | 49 | AFFIDAVIT of David Soley in Opposition to Def's Mtn for Prelim. Injunction filed by Pltfs, with 2 volumes of exhibits. | | |
| 1/24 | 51 | MOTION of Pltfs for Prelim. Injunction filed (UNDER SEAL) 1/30/90— Withdrawn & returned to counsel. See Order of Carter, J. | 22 | MOTION for Accelerated Decision and Consolidation filed by Parties. 1/25/90: GRANTED. See Order of Carter, J. |
| 1/25 | | | 23 | ORDER of Consolidation filed by Carter, J. *ORDERED* that the actions be consolidated for purposes of pretrial preparation only, the Court *RESERVING* decision as to whether the cases shall be consolidated *for trial;* that a copy of this Order be placed in the file on each case; and that all further pleadings be docketed on 89–0270–P (EOD 1/25/90) |
| 1/26 | 54 | MOTION of Pltfs for Prelim. Inj. filed | | |
| 1/26 | 19M | MEMO in support of above mtn filed with Appendix | | |
| 1/30 | 20M | REPLY MEMO of Deft Great Northern in support of Mtn for Prelim. Inj. filed | | |
| 1/30 | 21M | REPLY MEMO of Pltfs in support of Mtn for Partial S/J filed | | |
| 1/30 | 58 | MOTION of Pltfs to Waive Oral Argument on "Supermajority" Motion or for an Expedited Hearing filed | | |
| 1/30 | 22M | MEMO in support of above motion filed | | |

| DATE | DOCKET NUMBER | GEORGIA PACIFIC | DOCKET NUMBER | WEINBERGER |
|------|---------------|-----------------|---------------|------------|
| 1/31 | 59 | RESPONSE of Deft to Mtn to Waive O/A filed; 1/31/90—Proposal APPROVED. SO ORDERED. S/Carter, J. (Deft may file surreply memo by 2/2/90) | | Consent MOTION for Extension of Time to File Objection to Mtn for Prelim. Inj. filed by Deft 1/31/90: There being no obj, mtn *GRANTED.* SO *ORDERED.* S/Carter, J. |
| 2/01 | 61 | Letter Reply of Pltf re Waiver of O/A filed (See ## 58, 59) | | |
| 2/02 | 24M | SURREPLY MEMO of Defts in Opposition to Mtn for Partial S/J filed | | |
| 2/05 | | Hearing on Deft's Mtn for Prelim. Inj. scheduled for 2/12/90 at 1 pm before Carter, J. | | |
| 2/06 | 62 | MOTION of Pltfs for leave to file supp. memo re Mtn for Partial S/J filed; 2/7/90: Mtn *DENIED.* For the Court: s/Wm. S. Brownell, Clerk (proposed pleading returned to counsel) | | |
| 2/07 | 63 | Agreed MOTION for Coordinated Proceedings on Pltfs' Mtns for Prelim. Inj. filed by parties | 25 | Agreed MOTION for Coordinated Proceedings on Pltfs' Mtns for Prelim. Inj. filed by parties |
| 2/08 | 68 | MEMORANDUM and ORDER Granting Pltfs. Mtn for Partial S/J filed by Carter, J. *ORDERED* that Pltfs' Mtn for Partial S/J is *GRANTED* as to Count III of Complaint (EOD 2/8/90) | | |
| 2/12 | 69 | MOTION of Deft Great Northern for Entry of Final Judgment under Rule 54(b) filed | 29 | OBJECTION of Defs to Mtn for Prelim. Inj. filed |
| 2/12 | 70 | MOTION of Deft Great Northern to Amend Order and | | |

| DATE | DOCKET NUMBER | GEORGIA PACIFIC | DOCKET NUMBER | WEINBERGER |
|---|---|---|---|---|
| | | for Certification filed | | |
| 2/12 | 25M | MEMO of Deft Great Northern in support of above motions filed | | |
| 2/12 | | MOTION of Deft Great Northern for Expedited Hearing on Motions filed | | |
| 2/12 | 71 | AFFIDAVIT of Laurence D. Paskowitz filed by shareholder pltfs (89–0270–P) | | |
| 2/12 | | Hearing had on Deft's Mtn for Prelim. Inj. by Carter, J; matter taken under advisement. (P. Terry, Ct. Rep.) | | |
| 2/12 | 73 | OBJECTION of Defts to Mtn for Prelim. Inj. filed | | |
| 2/12 | 26M | MEMORANDUM of Defts in opposition to Mtn for Prelim. Inj. filed, with 2 separate volumes of exhibits | | |
| 2/13 | 27M | MEMO of Pltfs in opposition to Deft's Mtns for Certification filed | 6M | MEMORANDUM of Defts in opposition to Mtn for Prelim. Inj. filed |
| 2/14 | 77 | OBJECTION of Pltfs to Defts' Mtns for Certification filed | | |
| 2/14 | 78 | MOTION of Pltf for TRO and Prelim. Inj. Enjoining Certain of Def's action of 2/13/90 filed | | |
| 2/14 | 28M | MEMO of Pltfs in support of Mtn for TRO and Prelim. Inj. filed | | |
| 2/14 | 80 | MOTION of Pltfs for Order to Expedite response of Defts and for Expedited Hearing filed. 2/14/90: Mtn *DENIED.* Responses to be filed no later than Thurs., 2/15/90. For the Court: s/C. Dyer, D. Clerk | | |

| DATE | DOCKET NUMBER | GEORGIA PACIFIC | DOCKET NUMBER | WEINBERGER |
|---|---|---|---|---|
| 2/15 | 83 | MEMORANDUM and Order Denying Defts' Application for Prelim. Inj. filed by Carter, J. | 30 | ANSWER of Intervenor State of Maine filed (89–0291–P) |
| 2/15 | 84 | OBJECTION of Great Northern to Mtn for TRO and Prelim. Inj. filed | | |
| 2/15 | 29M | MEMO of Deft Great Northern in opposition to Mtn for Prelim. Inj. filed | | |
| 2/16 | | MOTION of Pltfs for Leave to file reply memo in excess of 5 pages filed | | |
| 2/16 | 30M | REPLY MEMO of Pltfs re Mtn for TRO and Prelim. Inj. filed | | |
| 2/16 | 31M | REPLY MEMO of Deft in support of Mtn for Certification filed | | |
| 2/22 | 88 | STIPULATION of Dismissal filed by parties, with prejudice and without costs | | |
| 4/23 | | | | Case reported settled. [2/22/90—Principal XN *DISMISSED*] |
| 5/14 | | | 31 | MOTION of Pltfs for Additional Time to Conclude Negotiations aimed at Resolving Pending Litigation filed; 5/16/90: The cases having been previously passed in the Court's procedures when each was reported by counsel to be settled, it is hereby *ORDERED* that final settlement papers be filed on or before 6/22/90, in default of which each case will be dismissed with prejudice by order of the Court. s/Carter, J. |

| DATE | DOCKET NUMBER | GEORGIA PACIFIC | DOCKET NUMBER | WEINBERGER |
|------|---------------|-----------------|---------------|------------|
| 5/23 | | | 32 | AFFIDAVIT of Stephen Oestreich filed by Pltfs |
| 6/21 | | | 33 | MOTION of Pltfs to Dismiss Actions as Moot filed; 6/28/90: See Order of Carter, J. |
| 6/21 | | | 7M | MEMO in support of above mtn filed |
| 6/28 | | | 34 | ORDER Granting in part Pltfs' Mtns to Dismiss Actions as Moot filed by Carter, J. *GRANTS* the mtn to the extent that it seeks dismissal as moot, and it is *ORDERED* that each of the matters is *DISMISSED*. To the extent that mtn seeks an award of counsel fees, the mtn is *DENIED*. SO *ORDERED*. |

---

## APPENDIX 2
### Inadequate Documentation

The Court will disallow hours for such activities as "research," "attention to matter," "draft letter," and "strategize" in the absence of more detailed time entries. It will not disallow hours here, however, for the countless inadequately documented billing entries regarding telephone calls, co-counsel conferences, document review, paralegal activity, and travel because the Court will disallow or reduce hours billed for those particular activities in separate sections.

The Court has disallowed hours of each firm for inadequate documentation, where applicable, as follows:

Baskin, Server, Burke & Weinstein:

| 11/3 | .75 | (Research) |
|------|-----|------------|
| 11/12 | .75 | (letter to Oestreich) |

Firm Total 1.50 × $220 = $330.00

Berger & Montague, P.C.:

| 1/1 | 1.4 | (12/28/89 — + t/ PASKOWITZ/MEET SRW; ASSIGNMENTS) |
|-----|-----|---------------------------------------------------|
| 1/2 | .8 | (discovery: motions) |
| | .25 | (Corresp w/RPF, JRS) |
| 1/3 | .8 | (same) |
| | .8 | (same) |
| 1/11 | 1.8 | (research re disclosures) |

Firm Total 5.85 × $285 = $1,667.25

Law Offices of Frederic F. Brace, Jr.:

| 2/8 | 1.0 | (study oprcafs) |
|-----|-----|-----------------|

Firm Total 1.0 × $400 = $400.00

Curtis, Thaxter, Stevens, Broder & Micoleau:

| | | |
|---|---|---|
| 11/3 | .25 | (memos) |
| Firm Total | .25 × $85 = $21.25 | |

Murray, Plumb & Murray:

| | | |
|---|---|---|
| 11/1 | .33 | (Attention to new matter) |
| 11/10 | 1.0 | (draft letter) |
| Total | 1.33 × $170 = $226.10 | |

| | | |
|---|---|---|
| 1/8 | 1.3 | (attention to matters re discovery) |
| 1/16 | .3 | (attention to matters) |
| 1/18 | .3 | (same) |
| 2/13 | 2.3 | (same) (work on written submissions) |
| 2/20 | .3 | (same) |
| Total | 4.5 × $145 = $652.50 | |
| Firm Total | $878.60 (5.83 hours) | |

Stull, Stull & Brody:

| | | |
|---|---|---|
| 10/31 | 2.0 | (Investigate new matter) |
| 11/1 | 1.0 | (Work on new matter) |
| 11/2 | 1.0 | (same) |
| 11/3 | .5 | (follow-up) |
| Firm Total | 4.5 × $350 = $1,575.00 | |

Wolf Popper Ross Wolf & Jones:

| | | |
|---|---|---|
| 11/20 | .233 | (new developments re: discovery) |
| | 1.5 | (Pre–Complaint/Complaint) |
| 11/22 | .5 | (New developments and factual study) |
| 11/27. | 1.0 | (New developments re Board removal by GP) |
| 12/24 | 2.0 | (Strategy) |
| 12/29 | .7 | (Strategize) |
| 2/9 | 1.0 | (Discussion and evaluation) |
| 2/13 | 1.5 | (New developments re GNN announcement) |
| Firm Total | 8.433 × $350 # $2,951.55 | |

Zwerling, Schachter & Zwerling:

| | | |
|---|---|---|
| 11/3 | .4 | (Factual research) |
| 11/9 | .1 | (same) |
| 11/13 | .25 | (same) |
| 11/14 | .2 | (same) |
| 11/18 | .1 | (same) |
| 11/20 | .1 | (same) |
| 11/21 | .4 | (same) |
| 11/22 | .1 | (same) |
| 11/28 | .1 | (same) |
| 12/12 | .4 | (same) |
| 12/14 | .1 | (same) |
| 12/16 | .1 | (same) |
| 1/3 | .1 | (same) |
| 1/5 | .1 | (same) |
| 1/11 | .1 | (same) |
| 1/17 | .1 | (same) |
| 1/18 | .1 | (same) |
| 1/24 | .1 | (same) |
| 2/13 | .2 | (same) |
| 2/14 | .2 | (same) |
| 2/15 | .1 | (same) |
| Total | 3.45 × $295 = $1,017.75 | |
| 11/3 | .25 | (research) |
| 11/13 | .2 | (same) |

| 11/17 | .4 | (same) |
|---|---|---|
| 12/1 | .3 | (same) |
| 12/8 | .1 | (Research news) |
| 12/15 | .15 | (same) |
| 1/3 | .2 | (same) |
| 1/10 | .2 | (same) |
| 1/23 | .2 | (Factual research) |
| 1/26 | .2 | (same) |

Total 2.2 × $265 = $583.00
Firm Total $1,600.75 (5.65 hours)

GRAND TOTAL AMOUNT: $9,424.40
GRAND TOTAL HOURS: 33.01

---

## APPENDIX 3
### Preparing Complaints and Other Initial Matters

Baskin, Server, Burke & Weinstein:

| 11/20 | .5 |
|---|---|
| 11/24 | 1 |

Firm Total 1.5 × $235 = $352.50

Berger & Montague, P.C.:

11/15 2 × $285 = $570.00

Law Offices of Frederic F. Brace, Jr.:

| 11/3 | 10 |
|---|---|
| 11/6 | 2 |
| 11/10 | .25 |

Firm Total 12.25 × $150 = $1,837.50

Curtis Thaxter Stevens Broder & Micoleau:

| 11/9 | .1 |
|---|---|
| 11/14 | .34 |
| 11/15 | .2 |
| 11/16 | .2 |
| 11/22 | .2 |
| 11/29 | .1 |

Firm Total 1.14 × $85 = $96.90

Kahn Robinson Curley & Clayton:

| 11/21 | 2.7 |
|---|---|
| 11/24 | 6.1 |
| 11/27 | 2.1 |
| | .8 |
| 11/29 | 2.85 |
| 11/30 | 1.35 |
| 12/1 | 4.77 |
| 12/4 | 2.5 |

Total 23.17 × $250 = $5,792.50

| 11/22 | 2.9 |
|---|---|
| 11/27 | 1.6 |
| 11/28 | 5.5 |
| 11/29 | .55 |
| 12/1 | 1.67 |

Total 12.22 × $150 = $1,833.00
Firm Total $7,625.50 (35.39 hours)

Kaufman Malchman Kaufmann & Kirby:

| | | |
|---|---|---|
| 11/30 | 1.25 | |
| Total | 1.25 × $375 = $468.75 | |

| | | |
|---|---|---|
| 11/30 | 6.25 | |
| 12/1 | 2.25 | |
| 12/8 | 2.5 | |
| Total | 11 × $350 = $3,850.00 | |
| Firm Total | $4,318.75 (12.25 hours) | |

Milberg Weiss Bershad Specthrie & Lerach:

| | | |
|---|---|---|
| 11/7 | .5 | |
| 11/15 | .5 | |
| Total | 1 × $240 = $240.00 | |

| | | |
|---|---|---|
| 12/11 | 2 | |
| 12/12 | 5.25 | |
| Total | 7.25 × 130 = $942.50 | |
| Firm Total | $1,182.50 (8.25 hours) | |

Murray, Plumb & Murray:

| | | |
|---|---|---|
| 11/2 | .6 | |
| 11/3 | .8 | |
| 11/7 | .3 | |
| 11/9 | .6 | |
| 11/21 | .5 | |
| 11/22 | .625 | |
| Firm Total | 3.425 × $145 = $495.63 | |

Stull, Stull & Brody:

| | | |
|---|---|---|
| 10/31 | 2 | |
| 11/1 | 1 | |
| 11/2 | 1 | |
| Firm Total | 4 × $350 = $1,400.00 | |

Law Offices of Curtis V. Trinko:

| | | |
|---|---|---|
| 11/1 | .6 | |
| 11/15 | .7 | |
| 11/22 | .25 | |
| 11/27 | .2 | |
| 11/28 | .3 | |
| 12/1 | .375 | |
| Total | 2.425 × $290 = $703.25 | |

| | | |
|---|---|---|
| 11/3 | 2.6 | |
| Total | 2.6 × $225 = $585.00 | |
| Firm Total | $1,288.25 (5.025 hours) | |

Law Offices of Joseph H. Weiss:

| | | |
|---|---|---|
| 11/2 | 2 | |
| Total | 2 × $325 = $650.00 | |

| | | |
|---|---|---|
| 11/2 | 6.5 | |
| 11/3 | 4 | |
| Total | 10.5 × $125 = $1,312.50 | |
| Firm Total | $1,962.50 (12.5 hours) | |

Wolf Popper Ross Wolf & Jones:

| | | |
|---|---|---|
| 11/14 | 2.66 | |
| 11/17 | .3 | |
| 11/29 | .83 | |
| 12/8 | 1.5 | |
| 12/14 | 1.5 | |
| Total | 6.79 × $350 = $2,376.50 | |

| | |
|---|---|
| 11/1 | 7 |
| 11/2 | 7 |
| 11/7 | 1 |
| 11/8 | .1 |
| 11/20 | 3.8 |
| 11/21 | 2.7 |

Total 21.6 × $265 = $5,724.00
Firm Total $8,100.50 (28.39 hours)

GRAND TOTAL AMOUNT: $29,231.53
GRAND TOTAL HOURS: 126.12

---

## APPENDIX 4
### Initial Brief for Preliminary Injunction

Mr. Schulman testified that four firms were principally involved in the drafting of this motion and that billing began in late December, 1989. *See* H.R. at 206, 225. He did not deny that other firms billed time for reviewing the preliminary injunction. Although the initial brief was filed on January 17, 1990, the Court has included a few hours listed below related to the initial brief that were billed after that date but that do not seem to fall within time billed for the reply brief in Appendix 5.

The Court has determined the amount of time billed by each firm, where applicable, for the drafting of the initial brief for a preliminary injunction, as well as other activity related to the motion, to be as follows:

Berger & Montague, P.C.:

 Jay R. Stiefel:
 1/4/90 .80
Total: .80 × $285 = $228.00

 Robert P. Frutkin:

| | |
|---|---|
| 1/10 | 3.5 |
| 1/15 | 1.0 |
| 1/16 | .5 |
| 1/17 | 1 |
| 1/24 | .5 |

Total: 6.5 × $285 = $1852.50

 David N. Salkin
 2/14 1.0
Total: 1 × $140 = $140.00
Firm Total: $2,220.50 (8.3 hours)

Law Offices of Frederic F. Brace, Jr.:

 William Berg:
 1/24 1.5
Firm Total: 1.5 × $150 = $225.00

Kaufman Malchman Kaufmann & Kirby:

 Roger Kirby:
 1/15 2.25
Total: 2.25 × $350 = $787.50

 Edward Rubin:

| | |
|---|---|
| 1/11 | 4.0 |
| 1/12 | 5.0 |
| 1/16 | 1.75 |

Total: 10.75 × $300 = $3225.00
Firm Total: $4,012.50 (13 hours)

Milberg Weiss Bershad Specthrie & Lerach:

 Steven Schulman:

| | | | |
|---|---|---|---|
| 12/28/89 | 2.75 | 1/10 | 6.0 |
| 12/29 | .75 | | 6.0 |
| | 1.5 | 1/11 | 6.5 |

| 1/1/90 | 3.0 | 1/12 | 14/75 |
|--------|-----|------|-------|
| 1/3 | 6.0 | 1/15 | 7.5 |
| 1/4 | 9.0 | 1/16 | .75 |
| 1/5 | 7.5 | | .75 |
| 1/8 | 3.0 | | 1.0 |

Total: 76.75 × $240 = $18,420.00

**Barry Weprin:**

| 12/26 | .5 |
|-------|-----|

Total: .5 × $230 = $115.00

**Lee Shalov:**

| 12/28 | .75 |
|-------|------|
| 12/29 | 3.25 |

Total 4.0 × $185 = $740.00

Firm Total: $19,275.00 (81.25 hours)

**Murray, Plumb & Murray:**

**Thomas Newman:**

| 1/16 | 2 |
|------|---|

Total: 2 × $145 = $290.00

**Richard O'Meara:**

| 1/5 | 1.0 |
|-----|-----|

Total 1.0 × $100 = $100.00

Firm Total: $390.00 (3 hours)

**Schiffrin & Craig, Ltd.:**

**Richard Schiffrin:**

| 12/29 | .5 |
|-------|-----|

Firm Total: .5 × $275 = $137.50

**Stull, Stull & Brody:**

**Howard Longman:**

| 1/3 | 10 | 1/9 | 11 |
|-----|----|-----|----|
| 1/4 | 10 | 1/10 | 6 |
| 1/5 | 7 | 1/11 | 6 |
| 1/8 | 11 | 1/12 | 8 |

Firm Total: 69 × $250 = $17,250.00

**Law Offices of Curtis V. Trinko:**

**Curtis Trinko:**

| 12/28 | 1.4 | 1/10 | 13.9 |
|-------|-----|------|------|
| 1/2 | 8.2 | 1/11 | 8.3 |
| 1/3 | 4.8 | 1/12 | 5.6 |
| 1/4 | 11.2 | 1/14 | 1.5 |
| 1/5 | 9.7 | 1/15 | 3.3 |
| 1/7 | 2.8 | 1/16 | 3.9 |
| 1/8 | 3.2 | 1/17 | 1.8 |
| 1/9 | 2.3 | | |

Total: 81.9 × $290 = $23,751.00

**Kevin Yourman:**

| 12/28 | 3.1 | | |
|-------|-----|------|------|
| 1/2 | 14/6 | 1/9 | 12.4 |
| 1/3 | 10.3 | 1/10 | 10.9 |
| 1/4 | 11.1 | 1/11 | 3.8 |
| 1/5 | 11.6 | 1/12 | 7.2 |
| 1/8 | .5 | | |

Total: 85.5 × $225 = $19,237.50

**Peggy Wedgworth:**

| 1/4 | 2.9 | 1/10 | 5.9 |
|-----|-----|------|------|
| 1/5 | 3.4 | 1/11 | 12.1 |
| 1/8 | 6.8 | 1/12 | 12.2 |
| 1/9 | 7.4 | 1/15 | 8.6 |
| | | 1/16 | 3.8 |

Total: 63.1 × $185 = $11,673.50

Firm Total: $54,662.00 (230.5 hours)

Law Offices of Joseph H. Weiss:

 Mel Lifshitz:
 1/9 6.5
Firm Total: 6.5 × \$125 = \$812.50

Wolf Popper Ross Wolf & Jones:

 Stephen Oestreich:

| 12/28 | 2 | 1/11 | 2 |
| | | | 2 |
| 1/2 | 1.5 | 1/5 | 3.5 |
| 1/4 | 2 | 1/15 | 3 |
| 1/9 | 1.5 | 1/16 | 3 |
| | 1.5 | 1/13 | 8.5 |

Total: 30.5 × \$350 = \$10,675.00

 Laurence Paskowitz:

| 1/3 | 9.6 | 1/9 | 9.2 | 1/14 | 7.7 |
| 1/4 | 2.2 | 1/10 | 8.3 | 1/15 | 13/8 |
| 1/5 | 10.9 | 1/11 | 14.2 | 1/16 | 11.2 |
| 1/7 | 4.5 | 1/12 | 15 | | |
| 1/8 | 9.3 | 1/13 | 4.2 | | |

Total: 120.1 × \$265 = \$31,826.50
Firm Total: \$42,501.50 (150.6 hours)

Zwerling, Schachter & Zwerling:

 Robin Zwerling:
 1/2 .5
Firm Total: .5 × \$265 = \$132.50

GRAND TOTAL AMOUNT: \$141,619.00
GRAND TOTAL HOURS: 564.65
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

In addition, the Court has disallowed billing entries for firms, based on a related motion to unseal, as follows:

Berger & Montague, P.C.:

 Robert Frutkin:
 1/24 .5
Firm Total .5 × \$285 = \$142.50

Wolf Popper Ross Wolf & Jones:

 Stephen Oestreich:
 2/6 2.0
 2/8 3.0
Total 5.0 × \$350 = \$1,750.00

 Laurence Paskowitz:
 1/26 3.7
 1/29 10.6
 1/30 1.5
 2/7 .6
Total 16.4 × \$265 = \$4,346.00
Firm Total \$6,096.00 (21.4 hours)

GRAND TOTAL AMOUNT: \$6,238.50
GRAND TOTAL HOURS: 21.9

## APPENDIX 5
### Reply Brief for Motion for Preliminary Injunction

Mr. Oestreich testified that, although most of the time spent on the reply brief occurred between February 13–20, 1990, some time was spent prior to that period. *See* H.R. at 115–16. A breakdown of each firm that billed time for activity related to the unfiled reply brief, where applicable, is as follows:

Kaufman Malchman Kaufmann & Kirby:

Edward Rubin:

| | |
|---|---|
| 2/15/90 | 5.75 |

Total: 5.75 × $300 = $1,725.00

Roger Kirby:

| | |
|---|---|
| 2/16 | 4.5 |

Total: 4.5 × $350 = $1575.00
Firm Total: $3,300.00 (10.25 hours)

Milberg Weiss Bershad Specthrie & Lerach:

Steven Shulman:

| | |
|---|---|
| 2/9 | 1 |
| 2/13 | 6 |
| 2/14 | 5.5 |
| 2/15 | 15.5 |
| 2/17 | 1.5 |
| 2/18 | 1.5 |
| 2/20 | 1.0 |

Total: 32.00 × $240 = $7,680.00

Lee Shalov:

| | |
|---|---|
| 1/29 | 2.5 |
| 1/31 | 2 |
| 2/1 | .75 |
| 2/13 | 4.75 |
| 2/14 | 8 |
| 2/15 | 17 |
| 2/16 | 9.25 |
| 2/18 | 1 |
| 2/19 | 1.25 |
| 2/20 | 6.25 |

Total 52.75 × $185 = $9,758.75
Firm Total: $17,438.75 (84.75 hours)

Murray, Plumb & Murray:

Peter Murray:

| | |
|---|---|
| 2/14 | .5 |

Firm Total .5 × $170 = $85.00

Stull, Stull & Brody:

Howard Longman:

| | |
|---|---|
| 2/13 | 5.5 |
| 2/15 | 13 |
| 2/16 | 8 |
| 2/20 | 2.5 |

Firm Total 29 × $250 = $7,250.00

Law Offices of Curtis V. Trinko:

Curtis Trinko:

| | | | | | |
|---|---|---|---|---|---|
| 1/18 | 3.1 | 1/29 | .2 | 2/9 | .7 |
| 1/19 | 1.1 | 1/31 | .1 | 2/12 | 3.6 |
| 1/22 | .72 | 2/5 | 2.2 | 2/13 | 9.6 |
| 1/23 | .3 | 2/6 | .2 | 2/14 | 10.1 |
| 1/24 | .8 | 2/7 | .1 | 2/15 | 15.6 |
| 1.26 | 1.0 | 2/8 | .3 | 2/16 | .4 |

```
2/17 1.3
2/18 5.7
Total 64.12 × $290 = $18,594.80
```

Kevin Yourman:

```
1/18 8.4
1/22 1.4
1/23 3.2
1/24 .5
1/25 .2
1/26 .3
Total 14 × $225 = $3,150.00
```

Peggy Wedgworth:

```
1/19 3.0
1/29 .3
1/30 .4
2/1 4.3
2/5 .4
2/6 .6
2/8 2.4
2/9 3.2
2/12 4.6
2/13 2.15
2/14 12.8
2/15 18.6
2/16 14.3
2/17 4.4
2/20 2.7
Total 74.15 × $185 = $13,717.75
Firm Total: $35,462.55 (152.27 hours)
```

Law Offices of Joseph H. Weiss:

Joseph H. Weiss:

```
2/1 3
2/2 2.5
2/15 3.5
2/16 4
Total 13 × $325 = $4,225.00
```

Mel Lipshitz:

```
2/1 4.5
2/15 3.5
Total 8 × $125 = $1,000.00
Firm Total $5,225.00 (21 hours)
```

Wolf Popper Ross Wolf & Jones:

Stephen Oestreich:

```
1/18 2.5
1/22 2
1/24 .5
1/25 1
1/26 .4
1/29 3
2/13 5
2/14 2
2/15 2.5
2/17 4
Total 22.9 × $350 = $8,015.00
```

Laurence Paskowitz:

```
2/9 4.1
2/13 12.5
2/14 1.5
```

| | |
|---|---|
| 2/16 | 1.3 |
| 2/18 | 12.6 |
| Total | 32 × $265 = $8,480.00 |
| Firm Total: | $16,495.00 (54.9 hours) |

GRAND TOTAL AMOUNT: $85,256.30
GRAND TOTAL HOURS: 352.67

---

## APPENDIX 6
### Telephone Conferences

In calculating the disallowances for entries marked by undetailed telephone calls, the Court will not disallow those entries that have been or will be disallowed for other reasons, including calls related to the motion for preliminary injunction or depositions, or made after February 20, 1990. The Court addresses those activities in separate sections.

To calculate the billed time for telephone conferences where such conferences are part of multiple activities within the same time entry, the Court has generally estimated the time, based on the average length of time for other separately billed telephone conferences within the same firm. Where such estimation was not possible, the Court has used its pro-rated system of equally dividing the time among multiple activities within the same time entry.

The breakdown of billings for telephone calls for each firm, where applicable, is as follows:

Baskin, Server, Burke & Weinstein:

| | |
|---|---|
| 11/3 | .75 |
| Firm Total | .75 × $220 = $165.00 |

Berger & Montague, P.C.:

| | |
|---|---|
| 11/2 | 1.6 |
| | .3 |
| | .2 |
| | .2 |
| Total | 2.3 × $345 = $793.50 |
| 1/2 | .25 |
| Total | .25 × $285 = $71.25 |
| 1/1 | 2.5 |
| | .15 |
| | .4 |
| | .1 |
| Total | 3.3 × $140 = $462.00 |
| Firm Total | $1,326.75 (5.85 hours) |

Law Offices of Frederic F. Brace, Jr.:

| | |
|---|---|
| 11/2 | 1.375 |
| 11/3 | 2.856 |
| 12/29 | 2.5 |
| Total | 6.731 × $100 = $673.10 |
| 1/3 | 1.25 |
| 1/10 | .25 |
| 1/18 | 2.75 |
| 2/8 | .25 |
| 2/20 | .25 |
| Total | 4.75 × $150 = $712.50 |
| 11/7 | 3.25 |
| Total | 3.25 × $125 = $406.25 |
| 11/8 | 1 |
| 11/10 | .75 |
| 11/15 | 1 |
| Total | 2.75 × $100 = $275.00 |
| Firm Total | $2,067.10 (17.481 hours) |

Curtis Thaxter Stevens Broder & Micoleau:

| | | | | | |
|---|---|---|---|---|---|
| 11/2 | .62 | 11/14 | .17 | 1/17 | .1 |
| 11/3 | .25 | 11/27 | .5 | 1/18 | .83 |
| 11/6 | .57 | 12/11 | .1 | 1/23 | .80 |
| 11/7 | .14 | 12/13 | .34 | 1/24 | .4 |
| 12/18 | .3 | 1/26 | .15 | | |
| 11/13 | .1 | 1/2 | .17 | | |

Firm Total $6.44 \times \$85 = \$547.40$

Kahn Robinson Curley & Clayton:

| | | | |
|---|---|---|---|
| 12/5 | 1.95 | 1/8 | .7 |
| 12/7 | 1.25 | 1/14–16 | .35 |
| 12/11 | .4 | 1/17 | .37 |
| 1/3 | 1.3 | 1/18 | .5 |
| 1/7 | .4 | | |

Firm Total $7.22 \times \$250 = \$1,805.00$

Krislov & Associates, Ltd.:

| | | | |
|---|---|---|---|
| 12/5 | 1.5 | 1/2 | .5 |
| 12/6 | .8 | 1/5 | 1.5 |
| 12/7 | 3 | 1/18 | 1.75 |
| 12/15 | 1.1 | 2/12 | 1.5 |
| 12/26 | .85 | 2/16 | 1.2 |

Firm Total $13.7 \times \$250 = \$3,425.00$

Milberg Weiss Bershad Specthrie & Lerach:

| | |
|---|---|
| 11/6 | .75 |
| 12/26 | .5 |

Firm Total $1.25 \times \$240 = \$300.00$

Murray, Plumb & Murray:

| | |
|---|---|
| 11/1 | .33 |
| 12/5 | .25 |
| 12/7 | .75 |

Total $1.33 \times \$170 = \$226.10$

| | | | | | |
|---|---|---|---|---|---|
| 11/2 | .60 | 12/13 | 1.0 | 1/18 | .2 |
| 11/3 | 1.2 | 12/15 | .5 | 1/29 | .25 |
| 11/7 | .9 | 12/18 | .75 | 1/30 | .5 |
| 11/9 | .2 | 12/20 | .2 | 2/9 | .2 |
| 11/14 | .33 | 12/29 | .3 | 2/10 | .2 |
| 11/21 | .5 | 1/2 | .75 | 2/13 | .2 |
| 11/22 | .625 | 1/3 | 1.67 | 2/14 | .4 |
| 11/28 | .33 | 1/4 | 1.0 | 2/15 | .6 |
| 11/29 | .5 | 1/5 | .25 | | .2 |
| 12/5 | .75 | 1/8 | .2 | 2/16 | .4 |
| 12/7 | 1.75 | 1/15 | .2 | 2/20 | .2 |
| 12/11 | .2 | 1/16 | .2 | | |

Total $18.255 \times \$145 = \$2,646.98$
Firm Total $\$2,873.08$ (19.585 hours)

Schiffrin & Craig, Ltd.:

| | |
|---|---|
| 11/1 | 1.0 |
| 12/14 | .5 |
| 12/15 | .5 |
| 1/8 | 1.0 |

Firm Total $3.0 \times \$275 = \$825.00$

Stinson, Lupton & Weiss, P.A.:

| | | | | | |
|---|---|---|---|---|---|
| 11/14 | .2 | 12/18 | .2 | 2/22 | .2 |
| 11/17 | .2 | | .2 | | .2 |
| | .2 | 12/22 | .2 | | |
| 12/5 | .2 | | .1 | | |
| | .1 | 12/27 | .2 | | |
| | .2 | 12/29 | .2 | | |

| | | | |
|---|---|---|---|
| | .2 | | .2 |
| | .2 | 1/2 | .2 |
| 12/6 | .2 | | .2 |
| 12/7 | .2 | | .1 |
| | .1 | 1/3 | .2 |
| | .2 | | .15 |
| | .25 | 1/4 | .1 |
| | .1 | 1/5 | .2 |
| | .1 | 1/22 | .4 |
| | .2 | 2/9 | .3 |
| 12/14 | .3 | 2/15 | .25 |
| | .2 | | |
| | .3 | | |
| 12/15 | .2 | | .2 |
| | .2 | 2/16 | .25 |
| | .2 | | |

Firm Total 8.5 × $150 = $1,275.00

Stull, Stull & Brody:

| | | | |
|---|---|---|---|
| 11/1 | .75 | | |

Firm Total .75 × $350 = $262.50

Law Offices of Curtis V. Trinko:

| | | | |
|---|---|---|---|
| 10/31 | .66 | | |
| 11/1 | .6 | 12/29 | .5 |
| 11/2 | .066 | 1/25 | .133 |
| 11/3 | .22 | | |
| 12/27 | .15 | | |

Firm Total 2.329 × $290 = $675.41

Law Offices of Joseph H. Weiss:

| | | | |
|---|---|---|---|
| 11/1 | 1.17 | 1/5 | .25 |
| 11/2 | 2 | 1/18 | .25 |
| 11/3 | 1.381 | 11/15 | .5 |
| 11/14 | .25 | 2/9 | .25 |
| 11/21 | .25 | 2/13 | .25 |
| 11/22 | .25 | 2/20 | .25 |
| 12/28 | .25 | | |
| 1/4 | .5 | | |

Total 7.801 × $325 = $2,535.33

| | |
|---|---|
| 11/22 | .25 |
| 12/26 | .25 |
| 12/29 | .25 |
| 1/10 | .25 |
| 1/17 | .25 |
| 2/14 | .25 |

Total 1.5 × $125 = $187.50

Firm Total $2,722.83 (9.301 hours)

Wolf Popper Ross Wolf & Jones:

| | | | | | |
|---|---|---|---|---|---|
| 11/6 | .3 | 11/20 | .5 | 12/11 | .73 |
| | .8 | 11/27 | 1 | 12/13 | .5 |
| | .2 | 11/28 | 1.34 | 12/26 | 1.5 |
| 11/7 | .5 | 11/29 | .3 | 1/8 | .2 |
| 11/10 | .2 | | 1.67 | 1/23 | .2 |
| 11/13 | 1.68 | 11/30 | .4 | 1/25 | .5 |
| 11/14 | 1.34 | | .5 | 2/20 | 4 |
| 11/15 | 2.5 | 11/2 | .5 | | |
| 11/16 | .34 | 1/17 | .67 | 1/22 | .67 |

Total 23.04 × $350 = $8,064.00

| | |
|---|---|
| 1/30 | 1.75 |

Total 1.75 × $300 = $525.00

Firm Total $8,589.00 (24.79 hours)

Zwerling, Schachter & Zwerling:

| | |
|---|---|
| 11/17 | .15 |
| 1/5 | .1 |
| Total | .25 × $295 = $73.75 |
| 11/3 | .25 |
| 11/7 | .4 |
| 11/9 | .2 |
| 11/22 | .4 |
| 2/20 | .2 |
| Total | 1.45 × $265 = $384.25 |
| 1/11 | .1 |
| 1/16 | .1 |
| 2/12 | .1 |
| Total | .3 × $150 = $45.00 |
| Firm Total | $503.00 (2 hours) |

GRAND TOTAL AMOUNT: $27,362.07
GRAND TOTAL HOURS: 122.946

## APPENDIX 7
### Co-Counsel Conferences

In calculating the disallowances for entries marked by co-counsel conferences, the Court will not disallow those entries that have been or will be disallowed for other reasons, such as conferences related to the motion for preliminary injunction, depositions, or activity after February 20, 1990.

The breakdown of billings for co-counsel conferences are as follows:

Baskin, Server, Burke & Weinstein:

| | |
|---|---|
| 11/3 | .5 |
| Total | .5 × $220 = $110.00 |
| 11/3 | 1.0 |
| 11/8 | .75 |
| Total | 1.75 × $150 = $262.50 |
| Firm Total | $372.50 (2.25 hours) |

Berger & Montague, P.C.:

| | |
|---|---|
| 12/13 | .4 |
| Total | .4 × $345 = $138.00 |
| 12/7 | .5 |
| Total | .5 × $285 = $142.50 |
| Firm Total | $280.50 (.9 hours) |

Law Offices of Frederic F. Brace, Jr.:

| | |
|---|---|
| 11/1 | 1.5 |
| 11/3 | 1 |
| Firm Total | 2.5 × $100 = $250.00 |

Curtis Thaxter Stevens Broder & Micoleau:

| | |
|---|---|
| 11/6 | .3 |
| 11/7 | .25 |
| Total | .55 × $145 = $79.75 |
| 11/2 | .62 |
| 11/3 | .5 |
| 11/6 | .19 |
| 11/7 | .25 |
| 12/6 | .1 |
| Total | 1.66 × $85 = $141.10 |
| Firm Total | $220.85 (2.21 hours) |

Kahn Robinson Curley & Clayton:

| | |
|---|---|
| 11/20 | .3 |

852

| | | |
|---|---|---|
| 11/27 | .8 | |
| 11/29 | .55 | |
| 12/1 | .83 | |
| 12/7 | 2.15 | |
| Total | 4.63 × $250 = $1,157.50 | |
| 11/20 | .3 | |
| 11/27 | .8 | |
| 11/29 | .55 | |
| 12/1 | .83 | |
| Total | 2.48 × $150 = $372.00 | |
| Firm Total | $1,529.50 (7.11 hours) | |

Kaufman Malchman Kaufmann & Kirby:

| | |
|---|---|
| 12/1 | 2.25 |
| 12/8 | 2.5 |
| Firm Total | 4.75 × $350 = $1,662.50 |

Krislov & Associates, Ltd.:

| | |
|---|---|
| 12/7 | 1.0 |
| Firm Total | 1.0 × $250 = $250.00 |

Milberg Weiss Bershad Specthrie & Lerach:

| | |
|---|---|
| 12/12 | 1.25 |
| 12/15 | 1.5 |
| 12/18 | .5 |
| 12/26 | .5 |
| 12/28 | .75 |
| Total | 4.5 × $240 = $1,080 |
| 2/21 | .1875 |
| Total | .1875 × $185 = $34.69 |
| Firm Total | $1,114.69 (4.6875 hours) |

Murray, Plumb & Murray:

| | |
|---|---|
| 11/1 | .33 |
| Total | .33 × $170 = $56.10 |
| 11/9 | .2 |
| 12/7 | .857 |
| 1/5 | .3 |
| Total | 1.357 × $145 = $196.77 |
| Firm Total: | $252.87 (1.687 hours) |

Stinson, Lupton & Weiss, P.A.:

| | |
|---|---|
| 11/17 | .1 |
| 12/5 | .4 |
| 12/7 | .2 |
| 12/7 | .2 |
| Firm Total | .9 × $150 = $135.00 |

Stull, Stull & Brody:

| | |
|---|---|
| 11/1 | .75 |
| 11/2 | 1.0 |
| 11/3 | .5 |
| Total | 2.25 × $350 = $787.50 |
| 1/2 | 4.0 |
| Total | 4.0 × $250 = $1,000 |
| Firm Total | $1,787.50 (6.25 hours) |

Law Offices of Curtis V. Trinko:

| | |
|---|---|
| 11/3 | .44 |
| 11/22 | .25 |
| 12/1 | .125 |
| 12/5 | .10 |
| 12/7 | .10 |
| 1/22 | .36 |
| 1/25 | .133 |
| Total | 1.508 × $290 = $437.32 |

| 11/1 | 1.13 | 11/16 | .4 |
| 11/2 | 3.7 | 11/21 | 1.27 |
| 11/3 | 1.6 | 11/28 | .8 |
| 11/6 | .8 | 12/8 | 1.8 |
| 11/7 | 1.4 | 12/12 | .2 |
| 11/10 | 1.7 | 12/20 | .6 |
| 11/14 | .25 | | |

Total $15.65 \times \$225 = \$3,521.25$

| 1/22 | 1.8 |
| 1/23 | .97 |

Total $2.77 \times \$185 = \$512.45$
Firm Total $\$4,471.02$ (19.928 hours)

Law Offices of Joseph H. Weiss:

| 11/3 | 1.5 |
| 12/28 | 1.75 |
| 1/17 | .75 |
| 2/14 | .25 |

Total $4.25 \times \$325 = \$1,381.25$

| 11/3 | 1.5 |
| | 1.5 |
| 12/28 | 1.0 |
| 1/17 | 1.25 |

Total $5.25 \times \$125 = \$656.25$
Firm Total $\$2,037.50$ (9.5 hours)

Wolf Popper Ross Wolf & Jones:

| 2/15 | .3 |

Total $.3 \times \$395 = \$118.50$

| 11/20 | .5 |
| | .23 |
| 12/7 | .5 |
| 12/11 | .73 |
| 12/13 | .5 |
| 12/14 | 1.5 |
| 12/28 | 1.0 |
| 1/17 | .67 |
| 1/19 | .5 |

Total $6.13 \times \$350 = \$2,145.50$

| 1/30 | 1.75 |

Total $1.75 \times \$300 = \$525.00$

| 11/3 | .3 |
| 12/7 | 1.2 |
| 2/5 | .3 |
| 2/6 | .2 |
| 2/20 | 2.0 |

Total $4 \times \$265 = \$1,060.00$
Firm Total $\$3,849.00$ (12.18 hours)

Zwerling, Schachter & Zwerling:

| 11/3 | .2 |
| 11/6 | .1 |
| 11/13 | .25 |
| 11/17 | .15 |
| 11/20 | .1 |
| 12/15 | .4 |
| 1/3 | .05 |

Firm Total $1.25 \times \$295 = \$368.75$

GRAND TOTAL AMOUNT: $\$18,582.18$
GRAND TOTAL HOURS: 77.1025

## APPENDIX 8
### Document Review

In calculating the disallowances for entries marked by review of pleadings and other documents, the Court will not disallow those entries that have been or will be disallowed for other reasons, including activity related to the motion for preliminary injunction or depositions, or dated after February 20, 1990.

A breakdown of billings based on such activity for each firm, where applicable, is as follows:

Baskin, Server, Burke & Weinstein:

| | |
|---|---|
| 11/8 | 1 |
| 11/12 | .75 |
| 12/8 | 2.0 |
| Total | 3.75 × $220 = $825.00 |
| 11/8 | .75 |
| Total | .75 × $150 = $112.50 |
| Firm Total | $937.50 (4.5 hours) |

Berger & Montague, P.C.:

| | |
|---|---|
| 1/1 | 1.5 × $140 = $210 |
| Firm Total | $210.00 (1.5 hours) |

Law Offices of Frederic F. Brace, Jr.:

| | |
|---|---|
| 11/7 | .5 |
| Total | .5 × $400 = $200.00 |

| | | | |
|---|---|---|---|
| 11/2 | 5.5 | 11/29 | 1 |
| 11/9 | .25 | 11/30 | 1 |
| 11/17 | .25 | 12/1 | .5 |
| 11/20 | .75 | 12/6 | .25 |
| 11/21 | 2.0 | 12/13 | 1/75 |
| 11/22 | 1 | 12/29 | 7.5 |
| 11/27 | 1.25 | | |
| 11/28 | .50 | | |
| Total | 23.5 × $100 = $2,350.00 | | |

| | |
|---|---|
| 1/2 | 4.25 |
| 1/11 | .50 |
| 1/17 | 1.5 |
| 2/3 | 1.5 |
| Total | 7.75 × $150 = $1,162.50 |
| Firm Total | $3,512.50 (31.25 hours) |

Curtis Thaxter Stevens Broder & Micoleau

| | |
|---|---|
| 11/2 | .5: |
| 11/6 | .19 |
| Total | .69 × $145 = $100.05 |

| | | | |
|---|---|---|---|
| 11/2 | .62 | 12/28 | .133 |
| 11/3 | .25 | 1/2 | .166 |
| 1/5 | .2 | | |
| 11/16 | .1 | 1/8 | .05 |
| 11/29 | .1 | 1/17 | .1 |
| 12/7 | .1 | 1/26 | .15 |
| 12/8 | .2 | 2/14 | .15 |
| 11/3 | .25 | 1/28 | .1 |
| Total | 2.669 × $85 = $226.87 | | |
| Firm Total: | $326.92 (3.359 hours) | | |

Kahn Robinson Curley & Clayton:

| | |
|---|---|
| 11/14 | 2.1 |

| | |
|---|---|
| 11/15 | 3.7 |
| 11/30 | 1.35 |
| 12/7 | 1.25 |
| 12/11 | 1.5 |
| Total | $9.9 \times \$250 = \$2,475.00$ |
| 11/29 | .55 |
| 12/1 | .83 |
| Total | $1.38 \times \$150 = \$207.00$ |
| Firm Total: | $2,682.00 (11.28 hours) |

Kaufman Malchman Kaufmann & Kirby:

| | |
|---|---|
| 12/5 | 6.75 |
| 12/7 | 3.5 |
| 12/8 | 3 |
| 12/28 | 3.5 |
| Firm Total | $16.75 \times \$300 = \$5,025.00$ |

Krislov & Associates, Ltd.:

| | |
|---|---|
| 12/5 | 6.3 |
| 1/9 | .8 |
| 1/19 | 1 |
| Firm Total | $8.1 \times \$250 = \$2,025.00$ |

Milberg Weiss Bershad Specthrie & Lerach:

| | |
|---|---|
| 11/1 | 2.5 |
| 12/19 | 1 |
| | 2 |
| Total | $5.5 \times \$240 = \$1,320.00$ |
| 11/13 | 2.875 |
| 12/21 | 3 |
| Total | $5.875 \times \$130 = \$763.75$ |
| Firm Total | $2,083.75 (11.375 hours) |

Murray, Plumb & Murray:

| | | | |
|---|---|---|---|
| | | 1/31 | 2 |
| 11/4 | 1 | 2/9 | 3.3 |
| 11/7 | .3 | 2/10 | 1.8 |
| 11/15 | 1 | 2/14 | .5 |
| 1/29 | .25 | 2/15 | 2.9 |
| 11/22 | .625 | | 2.3 |
| 1/15 | 1.3 | | |
| Firm Total | $17.275 \times \$145 = \$2,504.88$ | | |

Schiffrin & Craig, Ltd.:

| | | | | | |
|---|---|---|---|---|---|
| 11/1 | 1 | 12/4 | .5 | 1/13 | .75 |
| 11/6 | 1 | 12/11 | 1 | | .75 |
| 11/9 | 1 | 12/12 | 1 | 1/19 | 1 |
| 11/16 | 1 | 12/21 | .5 | 2/13 | .5 |
| 11/17 | .25 | 12/22 | 1 | 12/7 | .5 |
| Total | $11.75 \times \$275 = \$3,231.25$ | | | | |
| 1/9 | 1.17 | | | | |
| 1/13 | .75 | | | | |
| Total | $1.92 \times \$175 = \$336$ | | | | |
| Firm Total | $3,567.25 (13.67 hours) | | | | |

Stinson, Lupton & Weiss, P.A.:

| | | | | | |
|---|---|---|---|---|---|
| 11/17 | .15 | 12/22 | .3 | 1/9 | .75 |
| 12/5 | .25 | 12/29 | .2 | 1/16 | .125 |
| | .20 | | .417 | 1/22 | .22 |
| | 1.0 | 1/2 | .3 | 1/29 | .2 |
| 12/6 | .2 | 1/5 | .25 | 2/16 | .15 |
| 12/7 | .125 | | .1 | 2/5 | .1 |
| | | | .3 | | |
| Firm Total | $5.337 \times \$150 = \$800.55$ | | | | |

Stull, Stull & Brody:

| | |
|---|---|
| 11/6 | .5 |
| 11/21 | 2 |
| Total | 2.5 × $350 = $875.00 |
| 12/17 | 1 |
| Total | 1 × $250 = $250.00 |
| Firm Total: | $1,125.00 (3.5 hours) |

Law Offices of Curtis V. Trinko:

| | |
|---|---|
| 11/2 | .033 |
| 11/3 | .22 |
| 12/13 | .8 |
| 1/22 | .36 |
| 1/25 | .133 |
| Total | 1.546 × $290 = $448.34 |
| 11/1 | 1.13 |
| 11/21 | 1.27 |
| Total | 2.4 × $225 = $540.00 |
| 1/23 | .97 |
| 2/8 | 1.2 |
| Total | 2.17 × $185 = $401.45 |
| Firm Total | $1,389.79 (6.116 hours) |

Law Offices of Joseph H. Weiss:

| | |
|---|---|
| 11/1 | 1.17 |
| 11/3 | 1.375 |
| 11/21 | 2.125 |
| 12/27 | 1.5 |
| 1/9 | 1.125 |
| 1/17 | 4.25 |
| 2/1 | 1.5 |
| Total | 13.045 × $325 = $4,239.63 |
| 11/1 | 5 |
| 11/21 | 3.25 |
| 12/26 | 3.375 |
| 12/27 | 3.75 |
| Total | 15.375 × $125 = $1,921.88 |
| Firm Total | $6,167.62 (28.42 hours) |

Wolf Popper Ross Wolf & Jones:

| | | | |
|---|---|---|---|
| 11/2 | 1.65 | 12/12 | 3 |
| 11/7 | .5 | 12/8 | 2 |
| 11/13 | .82 | 12/28 | 1 |
| | | 12/16 | 3 |
| 11/30 | 1 | 12/21 | 3 |
| | 1.5 | 12/29 | 2 |
| 1/3 | 1 | | |
| Total | 22.47 × $350 = $7,864.50 | | |
| 12/11 | 9.1 | 1/18 | 7.7 |
| 12/12 | 12.7 | 1/22 | 2.3 |
| 12/13 | 9.8 | 1/25 | 3.6 |
| 12/15 | 6 | 2/8 | 1 |
| 12/17 | 10.5 | | |
| Total | 62.7 × $265 = $16,615.50 | | |
| Firm Total | $24,480.00 (85.17 hours) | | |

Zwerling, Schachter & Zwerling:

| | |
|---|---|
| 1/17 | .1 |
| Total | .1 × $295 = $29.50 |
| 12/26 | .5 |
| Total | .5 × $150 = $75.00 |
| Firm Total | $104.50 (.6 hours) |

GRAND TOTAL AMOUNT: $56,942.26
GRAND TOTAL HOURS: 248.202

---

## APPENDIX 9
### Newspaper Review

A breakdown of billing for reviewing of newspapers, such as the *WSJ*, where applicable, is as follows:

Baskin, Server, Burke & Weinstein:

| | |
|---|---|
| 11/3 | .5 |
| 11/8 | 1 |
| Firm Total | $1.5 \times \$220 = \$330.00$ |

Berger & Montague, P.C.:

| | |
|---|---|
| 11/28 | .1 |
| Total | $.1 \times \$345 = \$34.50$ |

| | |
|---|---|
| 11/1 | .3 |
| 11/14 | .3 |
| 11/20 | .4 |
| 11/28 | .4 |
| Total | $1.4 \times \$285 = \$399.00$ |
| Firm Total | $433.50 (1.5 hours) |

Law Offices of Frederic F. Brace, Jr.:

| | |
|---|---|
| 11/2 | 2 |
| Total | $2 \times \$400 = \$800.00$ |

| | |
|---|---|
| 11/14 | 2.5 |
| 11/16 | .25 |
| 12/7 | .25 |
| 12/8 | .5 |
| 12/21 | .25 |
| 1/8 | .45 |
| Total | $4.2 \times \$100 = \$420.00$ |

| | | | |
|---|---|---|---|
| 1/15 | .5 | 2/14 | .25 |
| 1/23 | .25 | 2/15 | .25 |
| 1/26 | .75 | 2/16 | .25 |
| 2/9 | .5 | 2/20 | .25 |
| 2/13 | .25 | | |
| Total | $3.625 \times \$150 = \$543.75$ | | |
| Firm Total | $1,032.50 (8.5125 hours) | | |

Curtis Thaxter Stevens Broder & Micoleau:

| | |
|---|---|
| 11/20 | .1 |
| Firm Total | $.1 \times \$145 = \$14.50$ |

Kahn Robinson Curley & Clayton:

| | |
|---|---|
| 12/8 | 1.5 |
| 2/20 | .4 |
| Firm Total | $1.9 \times \$250 = \$475.00$ |

Schiffrin & Craig, Ltd.:

| | |
|---|---|
| 10/31 | 1 |
| 12/7 | .5 |
| 2/13 | .5 |
| Firm Total | $2 \times \$275 = \$550.00$ |

Stull, Stull & Brody:

| | |
|---|---|
| 11/1 | .75 |
| 11/14 | .25 |
| 11/20 | .25 |
| Firm Total | $1.25 \times \$350 = \$437.50$ |

Law Offices of Curtis V. Trinko:

| | | | |
|---|---|---|---|
| 10/31 | .34 | | |
| 12/5 | .10 | | |
| 12/7 | .10 | | |
| Total | .54 × $290 = $156.60 | | |

| | |
|---|---|
| 11/6 | .8 |
| 11/14 | .25 |
| 11/21 | 1.27 |
| 11/28 | .4 |
| 12/12 | .2 |
| 12/20 | .6 |
| Total | 3.52 × $225 = $792.00 |
| Firm Total | $948.60 (4.06 hours) |

Law Offices of Joseph Weiss:

| | | | |
|---|---|---|---|
| 11/1 | 1.17 | 11/22 | .25 |
| 11/3 | 1.375 | 11/28 | .25 |
| 11/6 | .25 | 1/5 | .5 |
| 11/7 | .25 | 1/9 | 1.125 |
| 11/9 | .25 | 1/18 | .5 |
| 11/14 | .25 | 2/9 | .5 |
| 11/15 | .5 | 2/16 | 2 |
| 11/21 | 2.125 | | |
| Total | 11.295 × $325 = $3,670.88 | | |

| | |
|---|---|
| 11/21 | 2.125 |
| 12/15 | .25 |
| 12/29 | 1 |
| 1/10 | .25 |
| 2/13 | .25 |
| 2/14 | .25 |
| Total | 4.125 × $125 = $515.63 |
| Firm Total | $4,186.51 (15.42 hours) |

Wolf Popper Ross Wolf & Jones:

| | |
|---|---|
| 11/7 | .5 |
| Firm Total | .5 × $350 = $175.00 |

GRAND TOTAL AMOUNT: $8,583.11
GRAND TOTAL HOURS: 36.7425

---

## APPENDIX 10
### Fax Transmissions

A breakdown of billings based on such activity for each firm, where applicable, is as follows:

Curtis Thaxter Stevens Broder & Micoleau:
Chris Kennedy (associate):

| | |
|---|---|
| 12/18 | .15 |
| 1/17 | .10 |
| Firm Total | .25 × $85 = $21.25 |

Krislov & Associates:

| | |
|---|---|
| Clinton Krislov (partner) | .10 |
| Firm Total | .10 × $250 = $25.00 |

Murray, Plumb & Murray:
Peter Murray (partner)
 12/29 .40
Total .40 × $170 = $68.00

Thomas Newman (partner)
 11/14 .33
Total .33 × $145 = $47.85
Firm Total $115.85 (.73 hours)

Stinson, Lupton & Weiss, P.A.:
Ronald Lupton (partner)
 1/5 .25
 1/16 .125
 2/5 .10
 2/16 .15
Firm Total .625 × $150 = $93.75

Wolf Popper Ross Wolf & Jones:
Stephen Oestreich (partner):
 11/2 1.5
Firm Total 1.5 × $350 = $525.00

GRAND TOTAL AMOUNT: $780.85

---

## APPENDIX 11
Depositions

The breakdown by firm for deposition-related activity, where applicable, is as follows:

Baskin, Server, Burke & Weinstein (Deposition of Harold L. Airington):
 12/14 .5
 12/17 1.5
 12/18 4.0
 12/19 9.0
 12/21 3.0
Firm Total 18.0 × $220 = $3,960.00

Berger & Montague, P.C. (Depositions of James C. Van Meter, Norma Pace, Carroll T. Tolar, Keith Miller, Eugene Nesbeda, Gerald Veneman):
 12/18 1
 12/19 1.8
 12/27 12
 1/1 .7
 .2
 .4
 1/3 1.5
 1/4 10.0
 .8
 1/5 .3
 1/8 10.0
 10.0
 2/13 .3
Total 49 × $285 = $13,965.00

| 1/1 | | 1/2 | 5.0 |
| | 6 | | .8 |
| | .2 | 1/3 | 5.5 |
| | 9 | | .8 |

1
8 2/13 .5
2 2/14 4.5
.2 1.0
3
.4
.4
3.5
6.5
4
1
2.5
.3
.5
2.5
6.5

Total 75.6 × \$140 = \$10,584.00
Firm Total \$24,549.00 (124.6 hours)

Law Offices of Frederic F. Brace, Jr. (Depositions of Walden Dillaway and Raymond Taylor):

 12/15 .75
Total .75 × \$175 = \$131.25

 1/4 2.75
 1/5 5
 1/8 .45
Total 8.2 × \$150 = \$1,230.00

 12/15 1
 12/16 3
 12/18 12
 12/19 10
 12/20 10
 12/29 2.5
Total 38.5 × \$100 = \$3,850
Firm Total \$5,211.25 (47.45 hours)

Kahn Robinson Curley & Clayton (Reviewed deposition summaries and abstracted deposition):

 1/14–16 .175
 1/17 .37
 2/4 11.2
Total 11.745 × \$250 = \$2,936.25

 1/16 5.0
Total 5.0 × \$90 = \$450.00
Firm Total \$3,386.25 (16.745 hours)

Kaufman Malchman Kaufmann & Kirby (Deposition of Edward Mule and Francis Jungers; Digested deposition of Harold Airington and Edward Mule): Plaintiffs' counsel have shown that the deposition of Edward Mule was significant in this litigation with respect to its contribution to Plaintiffs' motion for a preliminary injunction. At the same time, however, the Court has questioned the significance of the motion itself in the litigation. The Court will allow only a portion of the 83 hours, totalling \$25,162.50, in attorneys' fees related to that deposition. The Court finds 83 hours to be excessive in the preparing, attending, and digesting of one deposition, particularly in the context of its use for this preliminary injunction motion. The Court will disallow 60% of those fees, for a disallowance of \$15,097.50.

Mule deposition:

| | | | | | |
|---|---|---|---|---|---|
| 12/20 | 1.75 | | | | |
| 12/21 | 3.5 | | | | |
| Total | 5.25 × $350 = $1,837.50 | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 12/14 | 5.5 | 12/21 | 6.25 | 1/4 | 2.75 |
| 12/15 | 6.25 | 12/22 | 5.0 | | |
| 12/18 | 4.25 | 12/26 | 9.25 | 1/8 | 5.5 |
| | 2.5 | | | | |
| 12/19 | 5.75 | 12/27 | 8.75 | 1/9 | 3.5 |
| 12/20 | 4.5 | | | 1/10 | 4.75 |
| | 3.25 | | | | |

Total 77.75 × $300 = $23,325.00
Total for Mule deposition $25,162.50 (83 hours)

Other depositions:

| | |
|---|---|
| 1/2 | 9.5 |
| 1/3 | 3.5 |
| 1/5 | 4.5 |
| Total | 17.5 × $300 = $5,250 |
| Firm Total | $5,250.00 (17.5 hours)* |

* Activity related to the Mule deposition has been addressed above (60% disallowance), so the hours and billing amount related to this deposition will not be included in the total hours and billing amounts for all firms (subject to a 90% disallowance).

Krislov & Associates, Ltd. (Reviewed and abstracted depositions):

| | |
|---|---|
| 1/9 | .4 |
| 1/15 | 3 |
| 1/17 | 1.2 |
| Firm Total | 4.6 × $250 = $1,150.00 |

Milberg Weiss Bershad Specthrie & Lerach (Deposition of Ronald Rakowski):

| | |
|---|---|
| 12/21 | 3 |
| 12/22 | 7.5 |
| Firm Total | 10.5 × $130 = $1,365.00 |

Schiffrin & Craig, Ltd. (Deposition of Peter Paine, Jr.):

| | |
|---|---|
| 12/21 | .5 |
| Total | .5 × $275 = $137.50 |

| | |
|---|---|
| 1/8 | 2.5 |
| | 1.0 |
| 1/9 | 3.5 |
| 1/10 | 5.5 |
| 1/11 | 2.0 |
| 1/19 | .25 |
| Total | 14.75 × $175 = $2,581.25 |
| Firm Total | $2,718.75 (15.25 hours) |

Stinson, Lupton & Weiss, P.A. (Reviewed digests of depositions of Larry Ballard, Francis Jungers, and Norma Pace):

| | |
|---|---|
| 1/19 | .2 |
| 2/5 | .5 |
| Firm Total | .7 × $150 = $105.00 |

Stull, Stull & Brody (Deposition of Douglas Wright):

| | |
|---|---|
| 12/18 | 7.5 |
| 12/20 | 3.0 |
| 12/21 | 6.0 |
| Firm Total | 16.5 × $250 = $4,125.00 |

Law Offices of Curtis V. Trinko (Depositions of Michael Bishko and Charles S. Francavilla; review of deposition digests):

| | |
|---|---|
| 12/29 | 7 |
| 1/22 | .36 |
| Total | 7.36 × $290 = $2,134.40 |

| | |
|---|---|
| 1/22 | 2.5 |
| 1/23 | .97 |
| 2/2 | 4.7 |
| 2/7 | 4.4 |
| Total | 12.57 × $185 = $2,325.45 |
| Firm Total | $4,459.85 (19.93 hours) |

Law Offices of Joseph H. Weiss (Prepare digests): The firm never billed for its depositions of Susan Eichen and Jane Hoffman.

| | |
|---|---|
| 12/26 | 3.375 |
| 12/27 | 3.75 |
| 12/28 | 6.5 |
| 12/29 | 1.75 |
| 1/3 | 8.5 |
| Total | 23.875 × $125 = $2,984.38 |

| | |
|---|---|
| 12/29 | 2 |
| Total | 2 × $325 = $650 |
| Firm Total | $3,634.38 (25.875 hours) |

Wolf Popper Ross Wolf & Jones (Depositions of Harold Airington, Larry Ballard, Stephen Du Brul, James Crump, Jr., T. Marshall Hahn, Jr., William Laidig, Eugene Nesbeda, Ronald Rakowski, James Van Meter, Charles Ward, Douglas Wright):

| | | | |
|---|---|---|---|
| 12/8 | 1.5 | 1/11 | 8.0 |
| 12/27 | 9 | 2/6 | .5 |
| 12/30 | 3.5 | 2/14 | 4.0 |
| 1/2 | 2.0 | 12/26 | .25 |
| 1/3 | 1.0 | 1/4 | 8.5 |
| Total | 38.25 × $350 = $13,387.50 | | |

| | | | | | |
|---|---|---|---|---|---|
| 12/15 | 6 | 12/24 | 6.1 | 1/1 | 3.0 |
| 12/18 | 12/5 | 12/26 | 6.3 | 1/2 | 9.7 |
| 12/19 | 13/8 | 12/27 | 10.1 | 1/4 | 7.9 |
| 12/20 | 3.6 | 12/28 | 6.2 | 1/19 | 3.0 |
| 12/21 | 2.2 | 12/29 | .8 | 2/15 | 3.3 |
| 12/22 | 9.0 | | | | |
| Total | 103.5 × $265 = $27,427.50 | | | | |
| Firm Total | $40,815.00 (141.75 hours) | | | | |

Zwerling, Schachter & Zwerling (Deposition of Charles Ward, review of deposition transcripts):

| | |
|---|---|
| 12/15 | .15 |
| Total | .15 × $265 = $39.75 |

| | |
|---|---|
| 12/18 | .2 |
| 12/26 | .5 |
| 12/27 | 7.0 |
| 1/3 | 3.1 |
| 1/4 | .8 |
| 2/11 | .2 |
| Total | 11.8 × $150 = $1,770.00 |
| Firm Total | $1,809.75 (11.95 hours) |

GRAND TOTAL AMOUNT: $102,434.23
GRAND TOTAL HOURS: 471.35

## APPENDIX 12
### Post–February 20, 1990 Nonfees' Activity

The breakdown of such activity for each firm, where applicable, is as follows:

Berger & Montague, P.C.: $342.00 (Robert Frutkin—$85.50 [.3 hours]; Jay Stiefel—$256.50 [.9 hours])

Law Offices of Frederic F. Brace, Jr.: $1,200.00 (William Berg—$975.00 [6.5 hours]; Kristi Browne—$225.00 [1 hour])

Curtis Thaxter Stevens Broder & Micoleau: $25.50 (Chris Kennedy—.3 hours)

Kahn Robinson Curley & Clayton: $275.00 (David Kahn—1.1 hours)

Milberg Weiss Bershad Specthrie & Lerach: $683.75 (Steven Schulman—$360.00 [1.5 hours]; Lee Shalov—$323.75 [1.75 hours])

Murray, Plumb & Murray: $2,566.00 (Thomas Newman—$2,175.00 [15 hours]; Peter Murray—$391.00 [2.3 hours])

Stinson, Lupton & Weiss, P.A.: $157.50 (Ronald Lupton—1.05 hours)

Law Offices of Curtis V. Trinko: $12,185.20 (Curtis Trinko—$2,879.70 [9.93 hours]; Peggy Wedgeworth—$9,305.50 [50.3 hours])

Law Offices of Joseph H. Weiss: $612.50 (Joseph Weiss—$487.50 [1.5 hours]; Mel Lifshitz—$125.00 [1 hour])

Wolf Popper Ross Wolf & Jones: $12,763.00 (Stephen Oestreich—$7,834 [8.3 hours]; Laurence Paskowitz—$4,929.00 [18.6 hours])

Zwerling, Schachter & Zwerling: $147.50 (Robert Schachter—.5 hours).

Total disallowance = $30,957.95 (121.83 hours)

---

## APPENDIX 13
### Fees–Related Activity

The specific breakdown of hours for each firm devoted to pursuing fees, where applicable, is as follows:

Berger & Montague, P.C.: $1,018.00 (Robert Frutkin: 2 hours; David Salkin: 3.2 hours)

Law Offices of Frederic F. Brace, Jr.: $218.75 (William Berg: 1.75 hours)

Curtis Thaxter Stevens Broder & Micoleau: $442.00 (Chris Kennedy: 5.2 hours)

Kahn Robinson Curley & Clayton: $2,835.00 (David Kahn: 2.4 hours; Mark King: 14.9 hours)

Krislov & Associates, Ltd.: $375.00 (Clinton Krislov: 1.5 hours)

Milberg Weiss Bershad Specthrie & Lerach: $10,800.00 (Steven Schulman: 15.75 hours; Joshua Vinik: 54 hours)

Murray, Plumb & Murray: $1,823.00 (Peter Murray: 3.9 hours; Thomas Newman: 8 hours)

Schiffrin & Craig, Ltd.: $343.75 (Michael Craig: 1 hour; Richard Schiffrin: .25 hour)

Law Offices of Curtis V. Trinko: $860.14 (Curtis Trinko: 2.966 hours)

Wolf Popper Ross Wolf & Jones: $50,202.50 (Stephen Oestreich: 46.9 hours; Laurence Paskowitz: 127.5 hours)

Zwerling, Schachter & Zwerling: $106.00 (Robin Zwerling: .4 hours).

GRAND TOTAL AMOUNT: $69,024.14
GRAND TOTAL HOURS: 291.616

---

## APPENDIX 14
### Paralegals

A breakdown of paralegal billing for each firm, where applicable, is as follows:

| Plaintiffs' Exhibit | Total Hours | Total Billing |
| --- | --- | --- |
| A | 10 | 350.00 |
| B | 14.3 | 1,175.50 |
| C | 6 | 420.00 |
| D | 1.5 | 75.00 |
| F | 3 | 240.00 |
| H | 27.25 | 2,143.75 |
| I | .7 | 38.50 |
| M | 54.4 | 4,052.00 |
| O | 143.1 | 12,228.50 |
| P | 11.2 | 784.00 |
| Total | 271.45 | $21,507.25 |

---

## APPENDIX 15
### Travel

The breakdown of each firm for travel-related fees, where applicable, is as follows:

| Plaintiffs' Exhibit | Date | Hours | Attorney | Rate | Total |
| --- | --- | --- | --- | --- | --- |
| B | 1/1 | 12.9 | Salkin | $140 | |
| | 1/3 | 4.7 | | | |
| | 2/14 | 4 | | | |
| | Total (depositions) | 21.6 | | | $3,024 |
| C | 11/13/89 (law library) | 1 | Berg | $100 | $ 100 |
| H | 12/20 | 4 | Schulman | $240 | |
| | 12/21 | 4 | | | |
| | Total (hearing) | 8 | | | $1,920 |

| Plaintiffs'<br>Exhibit | Date | Hours | Attorney | Rate | Total |
|---|---|---|---|---|---|
| K | 2/9/90<br>(hearing) | 1.5 * | Lupton | $150 | $ 225 |

Total Hours 32.1
Allowed Hours 31.1 +

Total Amount $5,269.00
Allowed Amount $311.00 (based on 31.1 hours × $10 per hour)
Total Disallowed Amount $4,958.00
+ The Court will disallow the 1 hour for Berg's travel to the law library
* The Court has estimated the round-trip travel between Bath and Portland

### APPENDIX 16
### LIST OF PARTIAL EXPENSES
#### A. Computerized Research

A breakdown of such expenses charged by each firm, where applicable, is as follows:

| | |
|---|---|
| Law Offices of Frederic F. Brace, Jr. | 57.43 |
| Milberg Weiss Bershad Spechtrie & Lerach: | $ 2,467.45 |
| Schiffrin & Craig, Ltd.: | 48.50 |
| Wolf Popper Ross Wolf & Jones: | 2,694.91 |
| (includes $1,949.50 for Information Services) | |
| Zwerling, Schachter & Zwerling: | 23.90 |
| Total: | $ 5,292.19 |
| Adjusted Total Allowance: | 0 |

#### B. Copying and Fax Transmissions

A breakdown by firm of copying and fax expenses, where applicable, is as follows:

| | |
|---|---|
| Berger & Montague: | $ 43.50 |
| Law Offices of Frederic F. Brace, Jr.: | 208.40 |
| Kahn Robinson Curley & Clayton: | 5.32 |
| Kaufman Malchman Kaufmann & Kirby: | 50.00 |
| Krislov & Associates, Ltd.: | 83.20 |
| Milberg Weiss Bershad Specthrie & Lerach: | 1,972.25 |
| (includes $361.50 for courier service) | |
| Murray, Plumb & Murray: | 1,053.10 |
| Stinson, Lupton & Weiss, P.A.: | 354.50 |
| Law Offices of Curtis V. Trinko: | 469.86 |
| Law Offices of Joseph H. Weiss: | 5.00 |
| Wolf Popper Ross Wolf & Jones: | 10,169.78 |
| Total: | $14,414.91 |
| Adjusted Total Allowance (80% reduction): | $ 2,882.98 |

#### C. Telephone and Telex

A breakdown of telephone and telex expenses for each firm, where applicable, is as follows:

| | |
|---|---|
| Berger & Montague: | $ 34.30 |
| Law Offices of Frederic F. Brace, Jr.: | 139.51 |
| Kahn Robinson Curley & Clayton: | 15.87 |
| Milberg Weiss Bershad Specthrie & Lerach: | 1,652.03 |
| Schiffrin & Craig, Ltd.: | 66.13 |
| Stinson, Lupton & Weiss, P.A.: | 49.11 |
| Law Offices of Curtis V. Trinko: | 50.31 |
| Wolf Popper Ross Wolf & Jones: | 460.78 |
| Total: | $ 2,468.04 |
| Adjusted Total Allowance (80% reduction): | $ 493.61 |

### D. Postage

A breakdown of such expenses by firm, where applicable, is as follows:

| | |
|---|---:|
| Berger & Montague, P.C.: | $ 9.70 |
| Law Offices of Frederic F. Brace, Jr.: | 94.75 |
| Kahn Robinson Curley & Clayton: | 23.50 |
| Krislov & Associates, Ltd.: | 43.58 |
| Milberg Weiss Bershad Specthrie & Lerach: | 361.75 |
| Murray, Plumb & Murray: | 42.10 |
| Law Offices of Curtis V. Trinko: | 12.60 |
| Wolf Popper Ross Wolf & Jones: | 927.83 |
| Zwerling, Schachter & Zwerling: | 41.00 |
| Total: | $ 1,556.81 |
| Adjusted Total Allowance (80% reduction): | $ 311.36 |

### E. Travel and Transportation

The breakdown by firm of deposition and other-related travel expenses, where applicable, is as follows:

| | |
|---|---:|
| Baskin, Server, Burke & Weinstein: | $ 447.00 |
| Berger & Montague, P.C.: | 1,235.89 |
| Law Offices of Frederic F. Brace, Jr.: | 300.56 |
| Milberg Weiss Bershad Specthrie & Lerach: | 4,168.41* |
| Murray, Plumb & Murray: | 40.85 |
| Schiffrin & Craig, Ltd.: | 794.75 |
| Stull, Stull & Brody: | 143.00 |
| Law Offices of Curtis V. Trinko: | 1,152.91 |
| Law Offices of Joseph H. Weiss: | 55.00 |
| Wolf Popper Ross Wolf & Jones: | 1,376.65 |
| Total: | $ 9,715.02 |
| Adjusted Total Allowance: | 162.69 |
| ADJUSTED GRAND TOTAL ALLOWANCE: | $ 3,883.64+ |

\* Of this total amount, a total of $928.97 was incurred for local "car services," which, according to Mr. Schulman, were billed by his secretary and certain associates who worked late on assignments in this action. *See* Plaintiffs' Post–Hearing Reply Memorandum, Exhibit F, ¶ 11. He added that his "sole usage was for travel to LaGuardia Airport for my trip to Maine on December 20, 1989." *Id.* The Court will allow for reimbursement of this latter expense. Although the disbursement dates do not correspond with the service dates, the Court will assume that Schulman's travel to LaGuardia Airport is indicated by the disbursement to "Schulman, S." dated February 1, 1990, in the amount of $33.00. The Court will allow this amount but it will disallow the rest of the transportation costs in the amount of $895.97.

See also *supra* note 69 for a discussion of the Court's allowance of a hotel bill in the amount of $129.69 billed by Mr. Schulman.

+ This "Adjusted Grand Total Allowance" does not include all expenses that the Court would have allowed in this litigation, such as filing fees, and reimbursements to the litigation fund. These expenses are addressed by the Court elsewhere in the text on "Expenses."